## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KEELY D. PARR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:07-cv-01718** |
| | ) |
| **MASHAALLAH EBRAHAMIAN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANTS' TIMOTHY WALKER AND THE WALKER GROUP, LLC'S MOTION TO DISMISS

Defendants Timothy Walker and the Walker Group, LLC, by counsel, move in accordance with Rule 12(b)(6) and 9(b) to dismiss plaintiff's Complaint and in support thereof state as follows:

1.  Plaintiff purchased a condominium from defendant Rimcor, LLC, an entity which is wholly unrelated to either Timothy Walker or the Walker Group, LLC. Plaintiff is now unhappy with the condominium and has filed this suit alleging that misrepresentations were made to her during the sales process and that her purchase was based on the misrepresentations. Neither Timothy Walker nor the Walker Group was involved in the sales transaction and neither had any relationship with or made any misrepresentations to plaintiff. Therefore, plaintiff has not alleged facts sufficient to state a claim against defendants Timothy Walker and the Walker Group and all claims alleged against them in the Complaint must be dismissed.

2.  Plaintiff has failed to allege facts sufficient to state a claim for a violation of the D.C. Consumer Protection Act against Timothy Walker and the Walker Group and Count I of the Complaint must be dismissed. The Walker defendants are not merchants with whom plaintiff engaged in a consumer transaction.

3.    Plaintiff has failed to allege facts sufficient to state a claim for a violation of the D.C. Condominium Act against Timothy Walker and the Walker Group and Count II of the Complaint must be dismissed.  The Condominium Act does not give rise to a private cause of action. Further, plaintiff has not alleged that the Walker defendants were involved in the preparation and dissemination of the Public Offering Statement which forms the basis for the allegations in her Complaint.

4.    Plaintiff has failed to allege particular facts sufficient to state a claim for fraud against Timothy Walker and the Walker Group and Count III of the Complaint must be dismissed.  Plaintiff has not alleged that defendants Timothy Walker and the Walker Group made false representations upon which she relied to her detriment.

5.    Plaintiff has failed to allege facts sufficient to state a claim for negligence against Timothy Walker and the Walker Group and Count IV of the Complaint must be dismissed.  Plaintiff has not sufficiently alleged that the Walker defendants owed her a duty and that they engaged in acts or omissions which were in a violation of that duty and caused her damages. Again, the Walker defendants were not involved in the sales transaction and did not owe any duties to the plaintiff and did not make any misrepresentations to her.

6.    Plaintiff has failed to allege facts sufficient to state a claim for negligent misrepresentation against Timothy Walker and the Walker Group and Count V of the Complaint must be dismissed.  Plaintiff has failed to allege that either Timothy Walker or the Walker Group made any representations to her during the sales transaction upon which she relied to her detriment.

7.    Defendants' Timothy Walker and the Walker Group's Memorandum of Points and Authorities is attached hereto and offered in further support of their Motion to Dismiss.

WHEREFORE, defendants Timothy Walker and the Walker Group respectfully request this Honorable Court to grant their Motion to Dismiss and to dismiss with prejudice all allegations and claims stated against them in the Complaint. Defendants further request such other and additional relief as this Court deems just and appropriate.

## REQUEST FOR A HEARING

In accordance with Local Rule 7(f) defendants request a hearing on their motion to dismiss.

Respectfully submitted,

**TIMOTHY WALKER**
**WALKER GROUP, LLC**

By:    _____
Counsel

David D. Hudgins, Esquire (DC Bar #362451)
Juliane C. Miller, Esquire (DC Bar #446783)
HUDGINS LAW FIRM
515 King Street, Suite 400
Alexandria, Virginia  22314
(703) 739-3300
(703) 739-3700 (fax)
dhudgins@hudginslawfirm.com
jmiller@hudginslawfirm.com
*Counsel for Timothy Walker and Walker Group, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Motion to Dismiss with Request for Hearing was served by first-class mail, postage prepaid, this 19th day of October, 2007 to Keely D. Parr, *Pro Se,* 51 Rhode Island Avenue, NW, #3, Washington, D.C. 20001.

_____
Counsel

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KEELY D. PARR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:07-cv-01718** |
| | ) |
| **MASHAALLAH EBRAHAMIAN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANTS' TIMOTHY WALKER AND THE WALKER GROUP, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF <u>MOTION TO DISMISS</u>

Defendants Timothy Walker and the Walker Group, LLC, by counsel state as follows for their Memorandum of Points and Authorities in support of their Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) and Rule 9(b).

**I.    <u>Introduction</u>**

Plaintiff, Keely Parr, is dissatisfied with a condominium she purchased from defendant Rimcor, a company established by defendant Mashaallah Ebrahamian. The property had been sold by Timothy Walker to Rimcor more than a year prior to its sale to plaintiff. Complaint, ¶ 33. At that time, the conversion process wherein the property was converted to condominiums and subsequently offered for sale as separate units had not been completed. Mr. Walker was not responsible for the conversion process. Neither Timothy Walker nor the Walker Group was involved in the transfer of ownership of the condominium from defendant Rimcor to plaintiff. Neither Mr. Walker nor the Walker Group made any representations to the plaintiff during the course of the sales transaction between plaintiff and defendant Rimcor. There is no allegation that Mr. Walker and/or

the Walker Group undertook any obligations with respect to plaintiff after the sale and there is no allegation that either made any assurances to plaintiff regarding the property.

The Complaint contains seven counts, five of which are directed to Mr. Walker and the Walker Group. Each claim requires an underlying relationship between Mr. Walker and/or the Walker Group and plaintiff in order to proceed. No where in the Complaint does plaintiff allege the requisite relationship. This is because there was no relationship between Mr. Walker / Walker Group and the plaintiff. If there was no relationship there can be no duty upon which the various claims can be based. Each claim against Timothy Walker and the Walker Group must be dismissed with prejudice.

**A.    Motion To Dismiss Standard**

In order to withstand a motion to dismiss pursuant to Rule 12(b)(6) a plaintiff must provide the grounds to his claimed entitlement to relief and must furnish more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Cadet v. Draper & Goldberg, PLLC, 2007 WL 2893418 at *3. (D.D.C. September 28, 2007) *quoting* Bell Atl. Corp. v. Twombly, 550 U.S. ___ , 127 S.Ct. 1955, 1964-64 (2007). The factual allegations must rise above mere speculation. Id. *citing,* Bell Atl. Corp. 127 S.Ct. at 1965. In considering a motion to dismiss based on Rule 12(b)(6) the plaintiff's allegations must be taken as true, and liberally construed in favor of the plaintiff. Id. However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Id. *quoting,* Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Plaintiff has failed to allege facts sufficient to state a claim against defendants Mr. Walker and the Walker Group and the claims against them should be dismissed.

### B.     Motion To Dismiss Standard For Fraud Claims

The Federal Rules of Civil Procedure set forth a heightened pleading standard for claims involving fraud. Rule 9(b) states that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b) the pleader must state the time, place and content of the false misrepresentations, the facts(s) misrepresented and what was obtained or given up as a consequence of the fraud. Cadet, at *4, *citing*, United States, ex rel. Joseph v. Cannon, 642 F.2d 1373, 1385 (D.C. Cir. 1981). As demonstrated below plaintiff has failed to meet these requirements and her claim for fraud must be dismissed.

## II.     Argument

### A.     *The Consumer Protection Act Claim Must Be Dismissed For Failing To State A Claim Against Either Timothy Walker Or The Walker Group.*

Count I of the Complaint purports to state a claim against all defendants for a violation of the D.C. Consumer Protection Act ("CPPA"). The crux of the claim is that the seller of the property made misrepresentations in the public offering statement and misrepresented that he had title on the date of settlement. Complaint, ¶ 45. The purpose of the CPPA is to assure that there is a mechanism to remedy improper trade practices and to promote fair business practices throughout the community. D.C. Code §29-3901(b). The CPPA applies to trade practices arising out of a "consumer-merchant relationship" wherein the parties are engaged in a "trade practice," and thus a valid claim must originate from a consumer transaction. Ford v. ChartOne, Inc., 908 A.2d 72, 82 (2006). Notably, plaintiff has failed to cite the specific CPPA provision she alleges was violated by the Walker defendants. This fundamental omission is accompanied by a failure to allege the essential elements of the claim for a violation of the CPPA. Plaintiff

3

has failed to allege that she, acting as a consumer under the CPPA, entered into a transaction with either Timothy Walker or the Walker Group who was acting as a merchant.  D.C. Code §29-3901(a)(2), (a)(3), (a)(6).  Plaintiff has not alleged she contracted to purchase goods or services from either Timothy Walker and/or the Walker Group.

In fact, plaintiff has acknowledged that she did not engage in a transaction with Timothy Walker and/or the Walker Group.  Assuming *arguendo* that the "transaction" at issue was the purchase of the Rhode Island property, the Complaint makes it clear that this transaction was between plaintiff and Ebrahimian / Rimcor only and that the Walker defendants were not parties to the transaction.  The complaint affirmatively alleges that plaintiff entered into a contract with Rimcor to purchase the property.  Complaint, ¶ 10. The Complaint says nothing about a contract with Timothy Walker and/or the Walker Group.

Mr. Walker did not offer to sell anything to plaintiff, did not offer or provide services to plaintiff and did not otherwise engage in a consumer transaction with plaintiff. As noted, the CPPA is intended to cover consumer transactions and therefore a necessary element is that the party being sued under the CPPA must have engaged in a transaction with the party suing.  Neither Mr. Walker nor the Walker Group was a party to the sale of the property.   Neither made any representations to plaintiff that were relied on at the time she purchased the property.  Plaintiff has not even alleged that she knew who Timothy Walker was at the time she purchased the property.  Plaintiff has failed to allege a claim for violation of the CPPA against Timothy Walker or the Walker Group and Count I of the Complaint must be dismissed.

**B.**    *Count II Of The Complaint Based On An Alleged Violation Of The Condominium Act Must Be Dismissed For Failing To State A Claim Against Either Timothy Walker Or The Walker Group.*

Count II of the Complaint purports to state a claim for violation of the D.C. Condominium Act ("Condo Act").  Complaint, Count II, D.C. Code §42-1901, *et seq*. The crux of the claim is that the public offering statement contained incorrect information, and that as a result she sustained damages.  Complaint, ¶ 51, ¶ 52, ¶ 53. These allegations do not state a viable claim and Count II must be dismissed.

First, these allegations are not sufficient to state a claim for damages under the Condo Act.  Pursuant to §42-1904.12 and §42-1904.13 of the D.C. Code the Mayor of the District of Columbia is entrusted with the administration of the Condo Act, including the investigation allegations under the Condo Act. D.C. Code §42-1904.12 and §42-1904.13. The Condo Act does not provide remedies in addition to those available at common law. Dresser v. Sunderland Apartments Tenants, Assn., Inc., 465 A.2d 835, 839, fn 14 (1983). Therefore, plaintiff does not have standing to pursue a separate claim for damages based on an alleged violation of the Condo Act.  This is particularly true since the allegations offered in support of Count II are identical to those offered in support of each of the other claims set forth in the Complaint.

Second, plaintiff's allegations center on false information provided in the public offering statement, a document she acknowledges was obtained from and prepared by Mashaallah Ebrahimian and/or Rimcor.  Complaint, ¶ 12, ¶ 13.  Rimcor acted as the Declarant during the conversion process and in that capacity swore that the information in the public offering statement was true and complete.  Complaint, ¶ 13 ¶ 14(d). Plaintiff makes this affirmative representation in her Complaint and relies on it to support her claims against Ebrahimian and Rimcor.  Complaint, ¶ 12, ¶ 13.  There is no allegation

that either Timothy Walker or the Walker Group was involved in the preparation of the

public offering statement or even that they had knowledge of what was contained in the

public offering statement. To the extent the public offering statement and the information

contained therein can be characterized as a representation, it was not information

provided by either Timothy Walker or the Walker Group to plaintiff. Mr. Walker was

not the Declarant and was not responsible for the conversion process. Mr. Walker did not

sell the condo to plaintiff. The public offering statement cannot be relied upon to state a

claim against Timothy Walker or the Walker Group.

Count II of the Complaint must be dismissed because the District of Columbia

Condominium Act does not establish a private cause of action which can be maintained

in the Court system for remedies other than those available at common law. Further, the

allegations contained in Count II do not pertain to acts taken by either Timothy Walker or

the Walker Group and therefore are insufficient to state a claim against them.

## C.  *The Fraud Claim (Count V) Must Be Dismissed For Failing To State A Claim  Upon Which Relief Can Be Granted.*

To state a claim for fraud, a plaintiff must prove, and thus must allege: (1) the

defendant made a false representation; (2) in reference to a material fact; (3) with

knowledge of its falsity; (4) with the intent to deceive the plaintiff; and (5) the plaintiff

acted in reasonable reliance on that representation; (6) which resulted in provable

damages. C&E Services, Inc. v. Ashland, Inc., 498 F.Supp. 2d 242, 255-56 (D.D.C.

2007) *citing,* Atraqchi v. GUMC Unified Billing Servs., 788 A.2d 559, 563 (D.C. 2002).

Federal Rule of Civil Procedure 9(b) requires the circumstances of an alleged fraud to be

pled with particularity. The purpose of the particularity requirement is to prevent attacks

on an individual's reputation when the claim is unsubstantiated. Chelsea v.

Condominium Unit Owner Assn v. 1815 A St. Condominium Group, LLC, 468 F. Supp.

2d 136, 145-46 (D.D.C. 2007). The plaintiff must plead the time, place, and content of the false representations, the misrepresented fact, and what the opponent retained and the claimant lost as a result of the alleged fraud. Id. at 146. The fraud claim may not "rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts upon which the pleader bases his claim." Id. at 146. Further, mere silence does not constitute fraud unless there is a duty to speak. Cadet v. Draper & Goldberg, PLLC, 2007 WL 2893418 at *6 (D.D.C. September 28, 2007). Fraud is never presumed and to survive a 12(b)(6) motion to a complaint must allege facts which demonstrate each required element. Id.

Count V of plaintiff's Complaint purports to be a fraud claim against "all defendants" but in reality only alleges actions which either were or should have been taken by defendants Ebrahimian and Rimcor. There is no who, what, when, where and how, alleged against Timothy Walker and the Walker Group. See, Chelsea, 468 F. Supp. 2d at 146. Plaintiff again addresses the allegations to "Defendants" in the plural without individualizing who owed her a duty, what duty was owed and why. The various defendants are distinct and in the case of the Mr. Walker/the Walker Group and Ebrahimian and Rimcor the entities are unrelated to each other. There is no allegation of a relationship between Mr. Walker and plaintiff, merely the conclusory statement that "[all] Defendants owed Plaintiff an affirmative duty to disclose." Complaint, ¶ 66. A review of the allegations of what was not disclosed makes it clear that the burden was on the seller (not the Walker defendants) to make the disclosure. For example, plaintiff claims a failure to disclose that "he did not have title to the premises." Complaint, ¶ 67 (a). The Walker defendants did not make this [mis]representation to plaintiff. Mr. Walker did not sell the property to plaintiff (he had sold it more than a year earlier to

Ebrahimian/Rimcor) and therefore did not "fail to" represent to her that he did have title.

Similarly, plaintiff's complaint regarding a failure to disclose that "he did not have a

certificate of occupancy" cannot state a claim against Timothy Walker and the Walker

Group because  they did not sell the property to plaintiff and were not obligated to have a

certificate of occupancy.  Complaint, ¶ 67 (b).  There is absolutely no allegation that the

Walker defendants had any involvement in the remaining "failure to disclose" matters set

forth in subsections (c) through (f) of paragraph 67.  Further, in prior paragraphs plaintiff

acknowledges that the Walker defendants were not the seller of the property and that she

did have a contractual or other relationship with them.  Paragraphs 67 (c) through (f)

relate to matters arising from the sales transaction between plaintiff and Ebrahimian and

Rimcor such as the home inspection contingency clause of the sales contract.  Even if

these allegations are considered sufficient to support a fraud claim, the alleged facts do

not involve either Timothy Walker or the Walker Group.

Paragraphs 68, 69, and 70 of the Complaint relate to the public offering statement

filed by Ebrahimian and attempt to state a claim based on a "fraudulent" disclosures.

Again, however these allegations are not related to items either Mr. Walker or the Walker

Group either disclosed or were obligated to disclose.  All prior allegations make it clear

that the public offering statement was offered by Rimcor as the developer of the property

and the Declarant.  Complaint, ¶ 12, ¶ 13, Rimcor was identified as the Declarant.

Complaint, ¶ 14 (d).  As demonstrated by her own allegations in the Complaint, plaintiff

cannot avoid the fact that the public offering statement was prepared by Ebrahimian

/Rimcor and that it does not contain any representations by the Walker defendants.  Nor

does the public offering statement create any duty to plaintiff by the Walker defendants.

Paragraphs 68-71 make it clear that the alleged fraudulent representations in the public

offering statement were not made by Walker and the Walker Group (who as previously acknowledged by plaintiff were not involved in the public offering statement) but were allegedly made by Ebrahimian / Rimcor.  Complaint, ¶ 68-¶ 71.

A fraud claim also requires an allegation of the consequence of the alleged fraud. Plaintiff has not properly alleged that Mr. Walker or the Walker Group made any representations that she relied on in deciding to purchase the property.  She has not identified any alleged consequence to her as a result of alleged acts or omissions on their behalf.  Plaintiff has failed to allege facts sufficient to state a fraud claim against  Mr. Walker and the Walker Group.

### D.    *Plaintiff Has Failed To State A Claim For Negligence And Count VI Must Be Dismissed.*

To properly plead negligence, a plaintiff must allege a duty of care, a deviation from that duty, and a causal relationship between the duty and the injury sustained by the plaintiff. Youssef  v. 3636 Corp., 777 A.2d 787, 792 (D.C. 2001).  Unless a defendant owes a duty to the plaintiff and breaches that duty there can be no claim for negligence.  Plaintiff identifies the duty allegedly breached as the "duty to exercise reasonable care in the marketing, selling, advertising and otherwise promoting of the condominium to Plaintiff."  Complaint, ¶ 76.  According to plaintiff there was a duty to disclose the characteristics of the condominium in marketing it for sale to her.  Complaint, ¶ 76.   Plaintiff then identifies a list of alleged breaches all of which pertain to and occurred during the marketing of the condominium for sale.  Complaint, ¶ 78.  For example, plaintiff again cites alleged representations in the public offering statement as being incorrect.  Complaint, ¶ 78 (d).  This does not allege a breach of duty on behalf of Mr. Walker or the Walker Group since the public offering statement was not prepared by them. Plaintiff also cites the alleged failure of Ebrahimian / Rimcor to disclose that they did not have title during the sales process.  Complaint, ¶ 78 (f).  Again, this does not allege a duty and breach thereof on

behalf of Mr. Walker and the Walker Group. No where in Count VI does plaintiff allege a duty

owed to her by Mr. Walker and the Walker Group, a breach of that duty and resulting damages to

her. The allegations relate to the sale of the condominium to plaintiff. Mr. Walker and the

Walker Group did not sell the condominium to plaintiff and cannot be liable for negligence

based on events which occurred during that transaction. Plaintiff has not alleged the essential

elements of negligence against Timothy Walker and the Walker Group and Count VI of the

Complaint must be dismissed.

### E.     *Claims For Negligent Misrepresentation Must Be Dismissed.*

To state a claim for negligent misrepresentation under District of Columbia law, a

plaintiff must allege (1) the defendant made a false statement or omission of a fact; (2)

the statement or omission was in violation of a duty to exercise reasonable care; (3) the

statement or omission involved a material issue; (4) the plaintiff reasonably relied on the

false information to his or her detriment; (5) the defendant's challenged conduct

proximately caused injury to the plaintiff. C&E Services, Inc. v. Ashland, Inc., 498

F.Supp. 2d 242, 256 (D.D.C. 2007) *citing,* Burlington Ins. Co. v. Okie Dokie, Inc.,

("Burlington II") 398 F. Supp. 2d 147, 153 (D.D.C. 2005). In very limited circumstances

the failure to disclose material fact can be deemed a misrepresentation sufficient to void a

contract. Cadet v. Draper & Goldberg, PLLC, 2007 WL 2893418 at *11 (D.D.C.

September 28, 2007).

The negligent misrepresentation counts fails because it is premised solely on

representations allegedly made during the sales transaction, by parties other than Timothy

Walker and the Walker Group. Plaintiff does not allege that either Timothy Walker or

the Walker Group made any representations to her and/or that she relied on such

representations when deciding to purchase the property. In fact, neither Mr. Walker nor

the Walker Group were involved in any way with the sale of the property to plaintiff. Neither Mr. Walker nor the Walker Group made any representations to plaintiff. Plaintiff's failure to allege that either Mr. Walker or the Walker Group made a false assertion warrants dismissal of the negligent misrepresentation claim.  Cadet v. Draper & Goldberg, PLLC, 2007 WL 2893418 (D.D.C. September 28, 2007).

**III.     Conclusion**

Plaintiff cannot state a claim against either Timothy Walker or the Walker Group for alleged problems with a condominium she purchased from someone else.  She did not buy the condominium from Timothy Walker and the Walker Group and therefore cannot sustain claims against them based on events surrounding the sale.  There were no representations made by Timothy Walker or the Walker Group to plaintiff.  Plaintiff's claims for violations of the D.C. Consumer Protection Act, the D.C. Condominium Act, and for fraud, negligence and negligent misrepresentation must be dismissed with prejudice.

<div style="margin-left:50%">

Respectfully submitted,

**TIMOTHY WALKER**
**WALKER GROUP, LLC**

By:  _____
Counsel

</div>

David D. Hudgins, Esquire (DC Bar #362451)
Juliane C. Miller, Esquire (DC Bar #446783)
HUDGINS LAW FIRM
515 King Street, Suite 400
Alexandria, Virginia  22314
(703) 739-3300
(703) 739-3700 (fax)
dhudgins@hudginslawfirm.com
jmiller@hudginslawfirm.com
*Counsel for Timothy Walker and Walker Group, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Memorandum in Support of Motion to Dismiss was served by first-class mail, postage prepaid, this 19th day of October, 2007 to Keely D. Parr, *Pro Se,* 51 Rhode Island Avenue, NW, #3, Washington, D.C. 20001.

Counsel

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 2893418 (D.D.C.)
**(Cite as: Slip Copy)**

Cadet v. Draper & Goldberg, PLLC
D.D.C.,2007.
Only the Westlaw citation is currently available.
   United States District Court,District of Columbia.
      John CADET, et al., Plaintiffs,
                      v.
DRAPER & GOLDBERG, PLLC, et al., Defendants.
         **Civil Action No. 05-2105 (JDB).**

            Sept. 28, 2007.

Travis A. Murrell, Murrell & Associates,
Washington, DC, for Plaintiffs.
L. Darren Goldberg, Rita Ting-Hopper, David
Matthew McPherson, James E. Clarke, Roxanne F.
Rosado, Draper & Goldberg, PLLC, Leesburg, VA,
Gary C. Tepper, Joshua Allen Fowkes, Arent Fox,
PLLC, Washington, DC, for Defendants.

JOHN D. BATES, United States District Judge.
*1 This diversity case arises from a real property
auction gone awry. On July 15, 2004 plaintiffs, John
and Yves Cadet, placed the winning bid of $500,000
at a public auction for property located in northwest
Washington, D.C. Although they put down a $30,000
deposit on the day of their successful bid, plaintiffs-
despite their best efforts-were ultimately unable to
secure financing for the remainder of the purchase
price. Consequently, the defendants determined that
the plaintiffs had breached the sale agreement and
thus retained the $30,000 deposit as liquidated
damages. Plaintiffs promptly brought suit in a
District of Columbia court alleging six counts: (1)
fraud, (2) misrepresentation, (3) breach of contract,
(4) wrongful conversion, (5) civil conspiracy, and (6)
punitive damages. Defendants removed the case to
this Court and moved to dismiss the complaint for
failure to state a claim upon which relief can be
granted. For the reasons set forth below, the Court
will grant defendants' motions to dismiss.

Plaintiffs were browsing through the real estate
section of the *Washington Times* during May and
June of 2004 when they happened upon an
advertisement ("Ad") for the sale at public auction of
"VALUABLE" property located at 2948 Albermarle
Street, NW, Washington, D.C. 20008 (hereinafter
"Subject Property"). Am. Compl. ¶ ¶ 9-10. The
myriad of defendants in this action is a result of the
series of steps that culminated in the ultimate auction
of the Subject Property. James G. Barnes and Iraline
G. Barnes were joint owners of the Subject Property
and mortgagees under the Note and Deed of Trust on
the Subject Property held by defendant G.E. Capital
Mortgage Services, Inc. (hereinafter "G.E.").*Id.* ¶ 8,
34.G.E. then named defendant Wells Fargo as the
servicer for the mortgage loan. Defs.' Wells Fargo
Bank, Wells Fargo Home Mortgage, G.E. Capital
Mortgage Services Mot. to Dismiss (hereinafter
"Wells Fargo Mot. to Dismiss") at 2.[FN1] Upon default
of the mortgagees, Wells Fargo in turn appointed
defendant Draper & Goldberg, PLLC ("D & G"), as
Substitute Trustee of the property; D & G then
contracted to place the Ad in the *Washington Times*
and arranged for the auction. Am. Compl. ¶ ¶ 3-5,
10.[FN2]

> FN1. In their Amended Complaint, plaintiffs
> name both Wells Fargo Bank, N.A., and
> Wells Fargo Home Mortgage, Inc. as
> defendants in this action. Am. Compl. ¶ ¶ 6-
> 7. For the purposes of this Memorandum
> Opinion, the Court will refer to the Wells
> Fargo defendants collectively as "Wells
> Fargo."

> FN2. In addition to D & G, plaintiffs have
> named as defendants the individual partners
> in that firm, L. Darren Goldberg and David
> Draper.

The Ad provided that the public auction would be
held on July 15, 2004 at 10:30 a.m. Am. Compl. ¶ 9.
In addition to providing the date of the sale, the Ad
contained the following terms and conditions of the
auction:
A deposit of $30,000 will be required at time of sale
in cash or certified funds, except from secured party.
Property sold in "AS IS" condition. Subject to liens
of record. Conveyance by special warranty deed.
Settlement in 30 days. If Sub. Trustee cannot convey
Insurable title, purchaser's sole remedy is return of
deposit. Additional sale terms announced at sale.

Wells Fargo Mot. Ex. A. The plaintiffs were attracted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 2
Slip Copy, 2007 WL 2893418 (D.D.C.)
**(Cite as: Slip Copy)**

to the Subject Property because of its "location, the good schools in the area, the nearby shops, and the fact that it was five (5) minutes away and accessible to many areas that the Plaintiffs visited," and thus decided to attend the auction to bid on the property. Am. Compl. ¶ 11. In preparation for the auction, plaintiffs secured a pre-approved loan on July 7, 2004 in the amount of $526,000 from Market Street Mortgage subject to a satisfactory appraisal of the Subject Property by the lender. *Id.* ¶ 12.Significantly, plaintiffs did not perform a title search on the Subject Property prior to attending the auction, nor is it apparent that they made any physical inspection of the property at that time either. In addition, plaintiffs do not claim that the defendants made any additional representations-aside from the description of the Subject Property in the Ad-*prior* to the auction.

**\*2** On the morning of the auction, plaintiffs placed the winning bid of $500,000, prevailing over two competing bidders.[FN3]Plaintiffs tendered the earnest money deposit in the amount of $30,000 and then signed a Memorandum of Sale with the substitute trustee D & G. *Id.* ¶¶ 15, 16.The Memorandum of Sale expressly provided that if the trustee failed for any reason to convey insurable title to the property, the purchaser's sole remedy was return of the deposit. Wells Fargo Mot. to Dismiss Ex. B. Moreover, the Memorandum of Sale further stated that:

> FN3. The other parties present at the auction were Ronald G. MacDonald and Marcia Wiss. Am. Compl. ¶ 14. According to plaintiffs, MacDonald and Wiss "(a) [are] well known to the Defendants, (b) claim a leasehold interest in the property, (c) were named parties to prior foreclosure procedures, (d) [are] owners of property adjacent to the Subject Property located at 3000 Albermarle Street, N.W., Washington D.C. 20008, and (e) ... have a driveway easement in their favor existing on the Subject Property."*Id.*

Settlement must be within 30 days of the sale date. Time is of the essence. If settlement does not occur within this time, the deposit may be forfeited, and the trustees may avail themselves of all other legal or equitable rights against the defaulting purchaser.
*Id.* Unbeknownst to the plaintiffs, later that same day, James G. Barnes and Iraline G. Barnes filed a voluntary Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the District of Columbia.

Draper & Goldberg Mot. to Dismiss ("D & G Mot. to Dismiss") Ex. A.

Plaintiffs promptly notified Market Street Mortgage of their successful bid, which then proceeded to conduct an appraisal of the Subject Property. Am. Compl. ¶ 19. In August 2004, Market Street informed plaintiffs that the loan would not be approved owing to "inadequate or unacceptable" collateral in the Subject Property. *Id.* Unfortunately for plaintiffs, this was the beginning of a process that ultimately left them rejected in similar fashion by three additional lenders. After receiving Market Street's decision, plaintiffs notified D & G of the rejection and assured defendant that they would continue to seek financing in good faith. *Id.* ¶ 20.Plaintiffs next turned to Money Tree Funding, LLC, which also refused to extend financing for the purchase of the Subject Property because said property did not "conform with its ... zone" and consequently its value "as collateral for the proposed loan is very inadequate."*Id.*

Following this second rejection, plaintiffs wrote to defendant Wells Fargo Bank by letter dated September 10, 2004 informing Wells Fargo of their difficulties in obtaining financing and requesting return of their $30,000 deposit. Am. Compl. ¶ 22. By letter dated September 14, 2004, plaintiff was notified by D & G that pursuant to the Memorandum of Sale, plaintiffs were required to tender the balance of the purchase price or else forfeit their deposit. *Id.* ¶ 23.D & G evidently then extended plaintiffs' initial 30-day window, setting a new deadline of September 27, 2004. *Id.* Facing the loss of their deposit, plaintiffs next turned to defendant Wells Fargo Bank for financing. *Id.* ¶ 26.Before plaintiffs received a response from Wells Fargo, on September 29, 2004-after granting plaintiffs an additional time extension of indeterminate length-D & G referred them to another lender, 1st American Mortgage, Inc., in a last ditch effort to salvage the deal. *Id.* ¶ 26, 27.Plaintiffs promptly filed an application with 1st American Mortgage, Inc., which initially approved plaintiffs' loan application on September 29, 2004.*Id.* ¶ 28.On that same day, Wells Fargo also informed plaintiffs that it had approved a loan to purchase the Subject Property. *Id.* ¶ 31.

**\*3** Plaintiffs, however, were not yet in the clear. Just as with the prior two lenders, 1st American subsequently denied plaintiffs' loan on October 16, 2004 following an appraisal that indicated that the Subject Property was "unacceptable and inadequate collateral." *Id.* ¶ 29.Similarly, more than one month

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2893418 (D.D.C.)
(Cite as: Slip Copy)

later, after conducting two separate appraisals, Wells Fargo Bank also denied plaintiffs' loan for "substantially the same reason(s) as the other prospective lenders."*Id.* ¶ 33.In the meantime, however, on October 25, 2004 D & G had provided plaintiffs with a notice of default of the Memorandum of Sale agreement and had indicated that defendants had elected to retain plaintiffs' $30,000 deposit as liquidated damages. *Id.* ¶ 32.

Plaintiffs now bring this action seeking return of their deposit in addition to other compensatory and punitive damages. Their six-count complaint alleges fraud, misrepresentation, breach of contract, wrongful conversion, civil conspiracy, and punitive damages under District of Columbia common law. Defendant D & G has moved to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants Wells Fargo and G.E. have similarly moved separately to dismiss all counts on the same grounds.

All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus,* 551 U.S. ----, 127 S.Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.,* 127 S.Ct. at 1964-65;*see also Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.,* 127 S.Ct. at 1965 (citations omitted). Hence, although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,' " *id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed.R.Civ.P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,' "

*id.* at 1966 (quoting Fed.R.Civ.P. 8(a)(2)).

**\*4** The notice pleading rules, however, are not meant to impose a great burden on a plaintiff. *Dura Pharm., Inc. v. Broudo,* 544 U .S. 336, 347 (2005); see also *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant County Narcotics & Coordination Unit,* 507 U.S. 163, 164 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979); *see also Erickson,* 127 S.Ct. at 2200 (citing *Bell Atl. Corp.,* 127 S.Ct. at 1965)). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer,* 416 U.S. at 236;*Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."*Kowal v. MCI Commc'n Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *see also Domen v. Nat'l Rehab. Hosp.,* 925 F.Supp. 830, 837 (D.D.C.1996) (citing *Papasan,* 478 U.S. at 286).

Finally, the Federal Rules of Civil Procedure provide for a heightened pleading standard for claims involving fraud. Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b). Although the particularity requirement distinguishes fraud claims from ordinary civil pleadings, Rule 9(b) is still subject to the general "short and plain statement" command of Rule 8. *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.,* 389 F.3d 1251, 1256 (D.C.Cir.2004) (explaining that Rule 9(b) is not the "antithesis" of Rule 8). Consequently, to satisfy Rule 9(b), the "pleader must state the time, place and content of the false misrepresentations, the fact[s] misrepresented and what was obtained or given up as a consequence of the fraud."*United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C.Cir.1981).

In Counts I and II of the Amended Complaint, plaintiffs seek damages for common law fraud and misrepresentation, respectively, based on certain allegedly fraudulent omissions on the part of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2893418 (D.D.C.)
(Cite as: Slip Copy)

defendants during the auction process. Count III requests relief on contractual grounds for defendants' alleged breach of the Memorandum of Sale for failure to refund plaintiffs' deposit. In Count IV, plaintiffs allege that defendants have wrongfully converted their deposit, whereas in Count V they assert that defendants engaged in an unlawful conspiracy to deprive plaintiffs of their earnest money. Finally, Count VI purports to state a claim for punitive damages based on defendants' allegedly intentional misconduct. The Court will address each of these counts in turn.

### A. Fraud

**\*5** Plaintiffs' first and most all-encompassing claim is their assertion that defendants either individually or in concert "acted deceptively and fraudulently in that they intentionally misrepresented, concealed and withheld material facts."Am. Compl. ¶ 37. More specifically, plaintiffs state that defendants failed to disclose:

(a) that the Subject Property had been offered for sale at public auction on several occasions over a period of several years without a consummated sale, (b) that the Subject Property was subject to an easement, (c) that the Subject Property was subject to a leasehold interest of undeterminable duration and an existing tenant, (d) that the property was unsuitable for the purpose intended, (e) that the auction was a sham transaction, (f) that the property was inadequate and unacceptable as collateral for financing, and (g) that the Defendants could not deliver title to the property.

*Id.* In its essence, plaintiffs' contention is that the defendants knew that the Subject Property could not serve as collateral for a loan of $500,000 due to the undisclosed defects listed above. Thus, in plaintiffs' view, the auction was merely a "sham" designed to misappropriate their deposit because defendants knew that the deal would not be-and, indeed, could not be-ultimately consummated by the plaintiffs. Defendants respond with two principal arguments: (1) that the plaintiffs have failed to plead fraud with particularity as required by Rule 9(b); and (2) that the Amended Complaint fails to state a fraud claim upon which relief can be granted for the purposes of Rule 12(b)(6).

### *1. Rule 9(b)'s Particularity Requirement*

As noted above, Rule 9(b) imposes a heightened pleading requirement for cases involving fraud,

requiring that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b). The D.C. Circuit has construed Rule 9(b) to require that the pleader must "state the time, place and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a consequence of the fraud."*Kowal,* 16 F.3d at 1278;*see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd,* 389 F.3d 1251, 1258 (D.C.Cir.2004) (affirming dismissal of a complaint under Rule 9(b) because it "allege[d] no start date, name[d] a laundry list of individuals without specifying their relation to the fraudulent scheme ... allege[d] a place only twice ... and set[ ] forth no facts that exemplify the purportedly fraudulent scheme"). This inquiry is complicated somewhat in this case simply because the essence of plaintiffs' fraud claim revolves around *nondisclosure* rather than affirmative misrepresentation, and as such, plaintiffs must necessarily allege when and what they believe *should* have been disclosed by the defendants.

At the outset, the Court finds that the plaintiffs have at least satisfied the particularity requirement for the "content of the false misrepresentation" prong of Rule 9(b). In Paragraph 37 of their Amended Complaint (and elsewhere throughout), plaintiffs lay out with sufficient specificity the nature and content of the information that they believe was fraudulently withheld from them. The remainder of plaintiffs' fraud count, however, is more problematic. To begin with, plaintiffs have not explicitly stated "when" they believe the defendants should have disclosed these supposedly material facts to them. Presumably this is information that the plaintiffs would have wanted to receive prior to the foreclosure auction on July 15, 2004. It is unclear, however, whether plaintiffs believe the disclosures should have been made in the Ad itself, in the Memorandum of Sale, or via oral notification during the morning of the auction but prior to the sale. Nor have plaintiffs expressly stated what was "given up" as a consequence of the fraud; again, presumably plaintiffs believe that they "gave up" their forfeited deposit due to the omissions, but this is not stated particularly in Count I.

**\*6** Defendants argue, moreover, that plaintiffs have impermissibly leveled their "allegations against all of the Defendants together."Wells Fargo Mot. to Dismiss at 5. Plaintiffs have indeed cast their allegations collectively against the defendants without specifying precisely which individual defendant they believe is responsible for each omission. This objection does in fact find some

support in D.C. Circuit case law. *See Martin-Baker Aircraft Co., Ltd,* 389 F.3d at 1258 (criticizing the complaint's "laundry list of individuals without specifying their relation to the fraudulent scheme"). Plaintiffs respond that such a grouping does not violate Rule 9(b) in this instance because the alleged omissions can be attributed to *all* defendants collectively by virtue of "an agency relationship," yet they cite no authority for that proposition, nor do they elaborate on the existence of this "agency relationship" anywhere in their Amended Complaint.[FN4]Pls.' Opp'n at 7.

> FN4. Plaintiffs' entire argument regarding the "agency relationship" is contained in one sentence in their brief opposing summary judgment. *See* Pls.' Opp'n at 7. The Amended Complaint makes no reference to the alleged agency relationship and offers no additional explanation concerning what particular defendants are responsible for the supposed fraudulent omissions.

The purpose of Rule 9(b) is to give defendants "adequate notice" of the specifics of a fraud claim against them so that they may "provide a meaningful response." *Daisley v. Riggs Bank,* 372 F.Supp.2d 61, 78-79 (D.D.C.2005). The ultimate Rule 9(b) inquiry in this case, then, is whether plaintiffs have satisfied that duty. It is a close question in this case, particularly because plaintiffs have sued various defendants but have not explicitly alleged the specific defendant that should be held responsible for each supposedly fraudulent omission. At the same time, however, the Amended Complaint likely does contain enough information for the defendants to be put on notice of the general substance of the fraud claim. Reading, as the Court must, Rule 9(b) "in conjunction" with Rule 8's requirement of a "short and plain statement of the claim," the Court is satisfied-although just barely-that plaintiffs have met the conditions of Rule 9(b). In any event, the Rule 9(b) question is not dispositive of the fraud issue, particularly because, as detailed below, the Court finds that the plaintiffs have failed to state a claim upon which relief can be granted in Count I.

### 2. Rule 12(b)(6)

Apart from any Rule 9(b) infirmities that may plague the Amended Complaint, the defendants also assert that plaintiffs have failed to state a claim upon which relief can be granted in Count I. Wells Fargo Mot. to

Dismiss at 6; D & G Mot. to Dismiss at 11. At bottom, defendants argue that plaintiffs' fraud claim cannot survive a motion to dismiss because defendants had no duty to disclose any information to the plaintiffs; that is, defendants assert that the doctrine of *caveat emptor* precludes a claim for fraud in this instance.[FN5]Plaintiffs, for their part, assert that they have properly alleged a claim for fraud and that this case is governed by an exception to the normal rule of *caveat emptor.*Pls.' Opp'n at 3.

> FN5. Although plaintiffs maintain that their fraud claim is "not based solely on fraudulent concealment," Pls.' Opp'n at 6, this Court disagrees. The only affirmative representation prior to the sale that the plaintiffs point to is the Ad for the Subject Property that defendant D & G placed in the *Washington Times.*Plaintiffs have not alleged that any information in that Ad, which expressly stated that the property was to be sold "AS IS" and "[s]ubject to liens of record" is false; in other words, plaintiffs have not claimed that the Ad itself is an affirmative misrepresentation. Instead, plaintiffs essentially argue that defendants failed to disclose several additional facts that rendered the Ad, in their view, fraudulent or misleading. Such a claim is properly considered as one for **fraud** by omission or fraudulent concealment.

In the District of Columbia, the **elements** of **fraud** are: (1) a false representation or willful omission in reference to a material fact, (2) made with knowledge of its falsity, and (3) with intent to induce the party to rely on the representation or omission, where (4) the party relies upon the representation or omission (5) to its detriment. *Schiff v. AARP,* 697 A.2d 1193, 1198 (D.C.1997). It is well established under District of Columbia law that "mere silence does not constitute fraud unless there is a duty to speak."*Kapiloff v. Abington Plaza Corp.,* 59 A.2d 516, 517 (D.C.1948); *see also In re Spectrum, Ltd.,* 2007 WL 2320587 at *2 (Bankr.D.D.C. Aug. 9, 2007) (collecting cases). Such a duty to speak can arise either from a fiduciary relationship, *see Hogan v. Md. State Dental Ass'n,* 843 A.2d 902, 908 (Md.2004),[FN6] or from an instance where a material fact or defect is unobservable or undiscoverable by "an ordinarily prudent person upon reasonable inspection,"*Loughlin v. United States,* 230 F.Supp.2d 26, 50 (D.C.2002). Moreover, "**fraud** is never presumed" and a plaintiff must "allege such facts as will reveal the existence of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2893418 (D.D.C.)
**(Cite as: Slip Copy)**

Page 6

all the requisite **elements** of **fraud**."*Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977) (emphasis added). In the specific context of a **realestate** foreclosure sale, "the doctrine of *caveat emptor* applies ... because a trustee makes no warranty of title and is generally subject to no duty to investigate or describe outstanding liens or encumbrances."*Stuart v. Am. Sec. Bank,* 494 A.2d 1333, 1338 (D.C.1985). Hence, a trustee in a foreclosure sale is under no duty to disclose defects that are discoverable in the course of a reasonably prudent inspection.*Loughlin v. United States,* 230 F.Supp.2d 26, 50 (D.D.C.2002) ("The doctrine of caveat emptor precludes a purchasers' recovery for real estate defects where, among other things, the defect is observable and discoverable by an ordinarily prudent person upon reasonable inspection.").

> FN6. Courts look to the common law of Maryland for guidance when District of Columbia precedents are not directly on point. *Conesco Indus., Ltd. v. Conforti & Eisele, Inc.,* 627 F.2d 312, 316 (D.C.Cir.1979) ( "[S]ince ... [the] District of Columbia does derive its common law from Maryland .... it is appropriate in matters concerning the District for which there is no District of Columbia law, that the District of Columbia court[ ] should look to the law of Maryland for guidance before it looks to the law of other states.").

**\*7** Upon consideration of the relevant case law and the standards governing dismissal under Rule 12(b)(6), the Court finds that plaintiffs have failed to state a claim for fraud upon which relief can be granted. Each of plaintiffs alleged fraudulent misrepresentations or omissions is either barred by the doctrine of *caveat emptor* or otherwise legally deficient under Rule 12(b)(6). Consequently, as demonstrated below, plaintiff has failed to establish the first element of fraud: a misrepresentation or omission regarding a material fact.

As an initial matter, the Court notes that the doctrine of *caveat emptor* governs under the facts of this case. As *Stuart* makes plain, a trustee in a bankruptcy sale is under no duty to disclose encumbrances or defects to a purchaser. 494 A.2d at 1338. Thus, the trustee stands in no form of fiduciary relationship that would impose a duty to speak that would trump the normal application of *caveat emptor* in an arm's length real estate transaction. Moreover, none of the allegedly fraudulent omissions or representations that the

plaintiff (as discussed below) has put forward meets the second exception to *caveat emptor* because those defects could have been discovered by "an ordinarily prudent person upon reasonable inspection."*Loughlin,* 230 F.Supp.2d at 50.

Turning to the plaintiffs' first allegation, the Court finds that the defendants did not commit a fraudulent omission in neglecting to inform the plaintiffs of the prior foreclosure sales. Am. Compl. ¶ 37. As defendants point out, foreclosure notices are matters of public record and are recorded under District of Columbia law. Draper & Goldberg Resp. to Pls.' Opp'n at 7. Thus, had plaintiffs performed a title search prior to bidding on the Subject Property, they would have been aware of the previous foreclosure notices and attempts. In *Stuart,* the court made clear that performing a record search for encumbrances and defects is just the sort of step that constitutes the required "reasonable inspection" for a foreclosure sale. 494 A.2d at 1338 ("In the instant case appellant discovered the [encumbrance] in the Office of the Recorder of Deeds. The disputed advertisement was thus sufficient to enable a prospective purchaser, 'by the exercise of ordinary intelligence to locate the property and to obtain more detailed information concerning it.' "). Defendants were under no duty to disclose the prior foreclosure notices because the plaintiffs could have discovered them in the exercise of "reasonable inspection." *See Loughlin,* 230 F.Supp.2d at 50. Hence, plaintiffs' allegations regarding the foreclosure notices are barred by the doctrine of *caveat emptor* and cannot provide the basis for a claim of fraud.

Plaintiffs' next two claims can be dealt with in similar fashion. The defendants did not notify the plaintiffs that the Subject Property was subject to an easement and that it was also subject to a leasehold interest of "undeterminable duration and an existing tenant."Am. Compl. ¶ 37. Both of these allegations fail to provide a sufficient basis for a claim of fraud. First, it is unclear from the face of the Amended Complaint whether the easement in question is recorded or not; ultimately, however, that fact does not matter for the purposes of resolving this motion. If the easement was recorded at the time that the plaintiffs bid on the Subject Property, then a proper title search would have revealed the encumbrance to the plaintiffs. Thus, as above, since the exercise of "reasonable inspection" via a record search would have provided plaintiffs with the information in question, defendants were under no obligation to disclose it. *See Loughlin,* 230 F.Supp.2d. at 50.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2893418 (D.D.C.)
**(Cite as: Slip Copy)**

**\*8** If, instead, the easement was *not* recorded at the time, then plaintiffs would have taken title to the Subject Property as bonafide purchasers (assuming no other notice is imputed to them) free from the encumbrance in any event. *See Clay Properties, Inc. v. The Washington Post Co.,* 604 A.2d 890, 898 (D.C.1992) ("A purchaser who conducts a proper title search, as the Post did here, is fully protected against all unrecorded interests falling within the recording statute, with the exception of any as to which the purchaser has actual or inquiry notice."). Moreover, if the easement was unrecorded, plaintiffs have not explicitly alleged that defendants were aware of its existence, a requisite element of fraudulent omission. Defendants, of course, cannot be found liable for fraud if they were unaware of the easement in the first place. *See Schiff,* 697 A.2d at 1198 (requiring that the defendant be aware of the falsity of the representation or omission). For these reasons, the alleged omission regarding the easement that burdens the Subject Property-recorded or not-is not a sufficient foundation for plaintiffs' fraud claim.

The leasehold interest presents the same issue as the easement, except that plaintiffs have affirmatively asserted that the leasehold interest was unrecorded. Pls.' Opp'n at 3-4. Plaintiffs argue that the unrecorded leasehold was neither "readily observable" nor "discoverable," and should therefore fall into the recognized exception to *caveat emptor* that governs defects that are not discoverable upon reasonable inspection. *See Loughlin,* 230 F.Supp.2d at 50;*see also Witherspoon,* 963 F.Supp. 455, 459 (D.D.C.1997) (holding that plaintiff adequately pled that defendant, a tobacco company, had a duty to disclose because of plaintiff's "inability to discover the addictive nature of nicotine" on his own). The defect at issue in *Loughlin,* however, is markedly different from those in this case. In *Loughlin,* toxic chemicals and munitions were buried beneath the ground in such a fashion that they were "impossible for anyone, no less an ordinarily prudent person, to discover."*Id.* The leasehold interest in this case, however, is not similarly "impossible" to discover. Although the leasehold interest was not recorded, in the District of Columbia notice "may be actual, constructive, or inquiry."*Clay Properties,* 604 A.2d at 895. Consequently, the physical presence of a tenant would arguably have put plaintiffs on inquiry notice of the possibility of a tenancy. *Id.* at 895-96 ("A purchaser is held to be on inquiry notice where he or she is aware of circumstances which generated enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances."). As with the foreclosure

notices and the easement, a physical inspection followed by reasonable inquiry may indeed have revealed the leasehold to plaintiffs prior to the sale, which indicates that defendants had no duty to disclose this information to plaintiffs. In any event, even if plaintiffs were alternatively not charged with inquiry notice-that is, for argument's sake, the physical possession in question was not "sufficiently distinct and unequivocal so as to put the purchaser on his guard,"*id.* at 896-then they would have taken title to the property free of the leasehold under the District of Columbia recording statute. In either case, plaintiffs fail to establish a basis for a fraudulent omission with their assertions with respect to the easement and unrecorded leasehold.

**\*9** The next allegation that the plaintiffs put forward is that the "property was unsuitable for the purpose intended."Am. Compl. ¶ 37. Plaintiffs' elaborate on this contention in their Opposition Brief, where they claim that the defendants fraudulently concealed that the property lot in question was "unbuildable." Pls.' Opp'n at 4. According to plaintiffs, the lot's "frontage is too small to build a residential unit" and the defendants "knew that the Plaintiffs could not build a residential unit."*Id.* As an initial matter, the Court notes that plaintiffs have not alleged in either their Amended Complaint or their briefing that the defendants in fact knew that the plaintiffs wanted to build a residential unit *at the time of the auction.*Instead, plaintiffs claim that defendants D & G made undefined "continued ... affirmative misrepresentations and omissions in reference to the property" following the auction; they also note that defendants did become "well aware" after the auction that plaintiffs "intended to ... build a residential house" on the lot. Pls.' Opp'n at 7. For the purposes of fraud, the relevant time frame for that knowledge is *prior* to the purchase because the chief concern is that plaintiffs would have been wrongfully induced to enter into an agreement. Naturally, defendants cannot be liable for fraudulent concealment because the property is unsuitable for residential building if they were unaware that plaintiffs in fact wanted to engage in such an endeavor.

In any event, the unbuildable lot contention suffers from another familiar flaw: the alleged defect could have been discovered via reasonable inspection. Plaintiffs argue that this defect was "unobservable and undiscoverable," Pls.' Opp'n at 4, but defendants point out that the Ad contained sufficient information to enable plaintiffs to commission a title search or a survey of the Subject Property.[FN7]*See Stuart,* 494 A.2d at 1338 ("The disputed advertisement was ...

Slip Copy                                                                                                      Page 8
Slip Copy, 2007 WL 2893418 (D.D.C.)
**(Cite as: Slip Copy)**

sufficient to enable a prospective purchaser, 'by the exercise of ordinary intelligence to locate the property and to obtain more detailed information concerning it.' "). Wells Fargo Reply to Pls.' Opp'n at 4-5. Because plaintiffs failed to take any of those steps, they are held to the doctrine of *caveat emptor* because they did not make a "reasonable inspection" of the Subject Property prior to the auction. Consequently, defendants were under no duty to disclose those facts to the plaintiffs. Thus, this allegation cannot support plaintiffs' fraud claim either.

> FN7. In fact, as asserted in their Original Complaint but not their Amended Complaint, that is precisely how plaintiffs became aware of the defects *after* their successful bid. Original Compl. ¶ ¶ 49, 51-52.

Plaintiffs also include "that the [Subject Property] was inadequate and unacceptable as collateral for financing" as a fraudulent omission by defendants. This ground also fails. The allegation is logically derivative in nature. By plaintiffs' own arguments, the Subject Property was inadequate collateral precisely because of the supposed defects discussed above. Am. Compl. ¶ 38. Hence, because the Court holds that defendants had no duty to disclose any of those defects to begin with, it follows that they similarly were not obligated to divulge this information either.

*10 Finally, plaintiffs' two remaining assertions of intentional withholding fail as actionable omissions because they are mere legal conclusions. Plaintiffs assert that "the auction was a sham transaction."Am. Compl. ¶ 37. Such a characterization is a legal conclusion rather than a factual allegation and therefore is not a basis for the omission element of fraud. *Kowal,* 16 F.3d at 1276 (explaining that the court need not "accept legal conclusions cast in the form of factual allegations"). Likewise, although it is discussed in more detail in Part C of this Memorandum Opinion, plaintiffs' contention that defendants "could not deliver title to the property" is unsupported by adequate factual allegations to survive a motion to dismiss. *See infra* Part C.

In sum, most of the facts that plaintiffs allege were fraudulently concealed from them cannot form a basis for an actionable fraud claim because the doctrine of *caveat emptor* did not require defendants to disclose such information. The remaining allegations are unsupported legal conclusions and

similarly do not lay the foundation for an actionable claim for fraud. In essence, plaintiffs' failure to conduct any pre-auction investigation of the Subject Property precludes their ability to state a valid claim for fraud in this case. Plaintiffs had ample time to make such an investigation. As the Amended Complaint makes plain, plaintiffs first viewed the Ad in the *Washington Times* on May 10, 2004, which indicates that they had over two months to conduct a physical inspection, a title search, and/or a survey of the Subject Property. Nor do plaintiffs allege that there were any barriers to conducting such an inspection. Moreover, the very terms of the Ad itself-"AS IS ... Subject to liens of record ... Conveyance by special warranty deed," Am. Compl. ¶ 10-should have served as sufficient warning to prospective purchasers to undertake a thorough investigation of the Subject Property prior to placing a bid on it. In a passage appropriate to this case, the District of Columbia Court of Appeals in *Stuart* put it harshly but succinctly: "That [plaintiff] failed to obtain the information before the foreclosure sale is no one's fault except his own."494 A.2d at 1339. Because it fails to state a **fraud** claim upon which relief can be granted, Count I is accordingly dismissed.[FN8]

> FN8. Although the Court need not decide whether plaintiffs have sufficiently alleged the other **elements** of a **fraud** claim, the Court notes that the plaintiffs' entire pleading concerning the remaining **elements** consists of the following averments: "The representations and omissions were in reference to material facts.... That they were made with actual and constructive knowledge of their falsity.... That they were made with intent to deceive Plaintiffs.... That the Plaintiffs relied to their detriment.... That the Plaintiffs suffered substantial harm."Am. Compl. ¶ ¶ 39-43. The Supreme Court recently held that a complaint must contain more than mere "labels and conclusions ... and a formulaic recitation of the **elements** of a cause of action will not do...."*Twombly,* 550 U.S. at ----, 127 S.Ct. at 1965. In this case, it does appear that plaintiffs have pled a mere "formulaic recitation" of the remaining **elements** of the **fraud** claim. This is even more apparent against the backdrop of District of Columbia precedent that requires that a plaintiff "allege such facts as will reveal the existence of *all* the requisite **elements** of **fraud**."*Bennett,* 377 A.2d at 59 (emphasis

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

added). Rather than assert such factual allegations, however, plaintiffs have evidently relied on one-sentence conclusions mimicking the required **elements** of **fraud**. As such, plaintiffs may indeed have failed to "raise a right to relief above the speculative level."*Twombly, 550 U.S. at ----, 127 S.Ct. at 1965.*

### B. Misrepresentation

In Count II of the Amended Complaint, plaintiffs assert a claim for misrepresentation. In essence, plaintiffs restate the same allegations from Count I in practically identical language. Am. Compl. ¶ ¶ 44-49. As an initial matter, the Court notes an apparent ambiguity in District of Columbia law concerning misrepresentation. Some courts have held that *intentional* misrepresentation is an **element** of **fraud** itself, and is therefore not an independent cause of action. *See, e.g., High v. McLean Fin. Corp., 659 F.Supp. 1561, 1566 n. 4 (D.D.C.1987)* ("Intentional misrepresentation is ... an essential **element** of the tort of **fraud**, not a separate tort in itself.). Defendants Wells Fargo and G.E. latch on to this concept and argue that Count II should be dismissed outright. Wells Fargo Mot. to Dismiss at 9. The District of Columbia, however, does recognize the doctrine of "innocent misrepresentation," by which a party may rescind a contract due to an innocent material representation. *See Barrer v. Women's Nat'l Bank, 761 F.2d 752, 758 (D.C.Cir.1985)* ("It is well established that misrepresentation of material facts may be the basis for the rescission of a contract, even where the misrepresentations are made innocently, without knowledge of their falsity and without fraudulent intent."). Since the plaintiffs only make reference to "misrepresentation" in Count II, it is not clear from the face of the Amended Complaint whether they assert a claim for innocent or fraudulent misrepresentation. For the purposes of this analysis, the Court will assume that plaintiffs intended to state a claim for innocent misrepresentation, as fraudulent misrepresentation is properly dealt with in the fraud context. As discussed below, plaintiffs have failed to allege an actionable innocent misrepresentation cause of action.

*11 There are four main elements to an innocent misrepresentation claim. The recipient of the supposed misrepresentation must establish that: (1) the defendant made an assertion that was "not in accord with the facts"; (2) the assertion concerned a material fact; (3) the plaintiff relied upon the assertion; (4) plaintiff was justified in that reliance;

and (5) plaintiff relied to her detriment.[FN9]*Barrer, 761 F.2d at 758.* Furthermore, "[u]nder very limited circumstances, a failure to disclose a material fact may be deemed a misrepresentation sufficient to void a contract."*Resolution Trust Corp. v. District of Columbia, 78 F .3d 606, 609 (D.C.Cir.1996).* Those "very limited circumstances" can impose a duty to speak where disclosure:

> FN9. The District of Columbia is one of the minority of jurisdictions that permits an innocent misrepresentation claim to proceed as either a cause of action to rescind the contract and restore the status quo *or* a cause of action for damages in tort. *Barrer,* 671 F.2d at 758 n. 29. For the purposes of this Memorandum Opinion, this distinction is immaterial. In either case, plaintiffs' relief would likely be the same: return of the $30,000 deposit.

(a) [I]s necessary to prevent a previous assertion from being a misrepresentation or from being fraudulent or material, (b) would correct a mistake of the other party as to a basic assumption on which that party is making the contract, if non-disclosure amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing, or (c) would correct a mistake of the other party as to the contents or effect of a writing. [The Restatement] also provides that where the other person is entitled to know the nondisclosed facts because of a relation of trust and confidence that exists between the parties, non-disclosure is equivalent to an assertion of facts. *Barrer,* 761 F.2d at 758 (deriving the elements from the Restatement (Second) of Contracts ("Restatement")).

In the instant case, plaintiffs fail to allege adequately that defendants have made an assertion "not in accord with the facts."The only relevant affirmative representation made by the defendants was contained in the contents of the Ad in the *Washington Times.*As plaintiffs appear to concede, there is nothing that is false or misleading about the Ad on its face. Pls.' Opp'n at 7. Thus, plaintiffs have not alleged that defendants have made any statements not in accordance with the facts.

Plaintiffs have also not established that any of the *Barrer* conditions that would permit a cause of action in misrepresentation based on nondisclosure have been satisfied. Turning to the first factor, the Ad contained no assertions that need to be clarified to

Slip Copy
Slip Copy, 2007 WL 2893418 (D.D.C.)
(Cite as: Slip Copy)

Page 10

prevent them from being misleading. The Ad stated in plain terms that the Subject Property was being sold "AS IS" and "[s]ubject to liens of record"; it is quite evident that defendants made no representations regarding the quality or nature of the Subject Property that they would need to correct. Next, plaintiffs have not demonstrated that defendants had a duty to speak to correct plaintiffs' "basic assumption on which [plaintiffs] [were] making the contract."*Barrer, 761 F.2d at 758.* Plaintiffs were purchasers at a public auction. They have made no allegations that defendants were even aware that plaintiffs intended to build a residential dwelling on the Subject Property, much less that defendants were aware that such an intention was a "basic assumption" motivating plaintiffs' bidding. Furthermore, defendants were under no obligation to correct plaintiffs' mistake as to any writing in this case. The only relevant writing, as discussed above, is the Ad itself, and plaintiffs could not have been mistaken about the contents of the Ad, which quite plainly disclaims any warranties or representations regarding the quality and nature of the Subject Property. Finally, as also discussed above, because the doctrine of *caveat emptor* applies in the foreclosure sale context, defendants and plaintiffs stood in no "relation of trust" that would impose upon defendants a duty to disclose.*Id.* Consequently, plaintiffs have failed to satisfy the first element of a misrepresentation claim and the claim in Count II should therefore be dismissed.

*12 Alternatively, even if the Court were to find that plaintiffs adequately met the other requirements of an actionable misrepresentation claim, they would nonetheless falter on the fourth element: justifiable reliance. In *Resolution Trust,* the D.C. Circuit expounded on the justifiable reliance requirement. *78 F.3d at 609.* Relying heavily on the Restatement of Contracts and the accompanying comments, the D.C. Circuit explained that: "If the recipient knows that the assertion is false *or should have discovered its falsity by making a cursory examination,* his reliance is clearly not justified and he is not entitled to relief."*Id.* (quoting Restatement § 172 cmt. b) (emphasis added). As detailed above, plaintiffs in this case did not make any reasonable investigation of the property prior to placing their bid on July 15, 2004. Such an investigation-whether in the form of a title search, land survey, or detailed physical examination-is precisely the sort of "cursory examination" that is a prerequisite to an actionable claim under *Resolution Trust.*Consequently, plaintiffs' failure to make such an investigation precludes their recovery on misrepresentation grounds because they cannot

satisfy the detrimental reliance component that is required to establish an actionable claim. Accordingly, Count II is hereby dismissed.

## C. Breach of Contract

According to plaintiffs' claims in Count III, defendants breached the Memorandum of Sale agreement by refusing to refund their deposit money. As the Memorandum of Sale makes plain, defendants were obliged to deliver "insurable" title to the plaintiffs. Am. Compl. ¶ 16. Moreover, the Memorandum of Sale expressly contemplated that the defendants would refund plaintiffs' deposit money only in the event that defendants failed to deliver insurable title. Hence, the basis for plaintiffs' claim for breach of contract appears to rest on one of two premises: (1) that defendants could not, in fact, deliver insurable title to plaintiffs owing to defects in the Subject Property itself; or (2) that defendants were without authority to deliver insurable title due to the bankruptcy filing of James and Iraline Barnes. As explained below, the Court rejects both of these contentions. Significantly, Count III is devoid of one critical allegation required to survive a motion to dismiss: that the defendants in fact failed to convey insurable title. Put another way, plaintiffs have not alleged that defendants actually breached the Memorandum of Sale.

Plaintiffs allege that the defendants could not convey insurable title because the property was subject to both an easement and a leasehold interest and because the property was inadequate collateral for plaintiffs to secure adequate financing. Am. Compl. ¶ 51. As defendants correctly point out, however, these are not factors that necessarily render title uninsurable. Wells Fargo Mot. to Dismiss at 11. Insurable title and marketable title are not synonymous terms. Whereas marketable title is title "that a reasonable buyer would accept because it appears to lack any defect,"*Black's Law Dictionary* 1493 (7th ed.1999), insurable title is "title which the designated title company, in the honest exercise of its professional judgment, would in fact insure."*Aronoff v. Lenkin Co., 618 A.2d 669, 677 (D.C.1992); see also*Samuel Williston & Richard A. Lord, A *Treatise on the Law of Contracts* § 50:20 (4th ed.1993). Consequently, plaintiffs' allegations concerning encumbrances, inadequate collateral, and other defects in the Subject Property are not probative of whether defendants have breached their duties under the Memorandum of Sale because such allegations go to the *marketability* of title rather than whether title is

Slip Copy

Slip Copy, 2007 WL 2893418 (D.D.C.)

**(Cite as: Slip Copy)**

insurable.Instead, the proper inquiry is whether defendants could in fact deliver insurable title at closing; defendants could not have breached the contract before that time because they were under no duty to deliver insurable title until that point.[FN10]Significantly, plaintiffs make no claim that any title insurance company either refused or would refuse to insure the Subject Property's title.[FN11]In short, plaintiffs have alleged no facts that can support an inference that defendants could not convey insurable title to the plaintiff.

> FN10. For their part, defendants maintain that they were ready and willing to deliver insurable title to plaintiffs at all times relevant to this action. D & G Mot. to Dismiss at 9-10.

> FN11. It is worth noting that unlike many sale contracts that provide for insurable title, the Memorandum of Sale in this case did not call for any specific title insurance company to issue insurance to the title in question.

*13 In addition to complaining of the undisclosed defects in the Subject Property, plaintiffs claim that the voluntary bankruptcy petition of the record owners precluded defendants from ultimately delivering insurable title. Although it is not entirely clear from the face of the Amended Complaint, the crux of this allegation evidently centers around the automatic stay of proceedings concerning the debtor's estate associated with filing a bankruptcy petition. See generally9B Am.Jur.2d Bankruptcy § 1723. Significantly, however, the record owners did not file their petition until 3:20 p.m. on July 15, 2004, after the plaintiffs had already successfully bid on the Subject Property during that same morning. Am. Compl. ¶ 35; D & G Mot. to Dismiss Ex. A. The United States Bankruptcy Court for the District of Columbia addressed a strikingly similar factual scenario in In re Carlietha M. Murphy, 342 B.R. 671 (Bankr.D.D.C.2006). In that case, the court held: "Because the debtor's petition was not filed until after the foreclosure sale was held, no automatic stay was in place to stay the sale. Once the gavel fell at the foreclosure sale, only the purchaser's rights arising from the sale remained to be enforced ."Id. at 673.The instant case presents precisely the same situation; as in In re Carlietha M. Murphy, since the plaintiffs completed their auction purchase before the owners filed for bankruptcy, no automatic stay attached to the Subject Property. Thus, defendants were not precluded from proceeding with the transaction by the bankruptcy petition.

In sum, plaintiffs have failed to state a claim for breach of contract. They have pled no allegations that demonstrate that defendants neglected to perform a duty owed to plaintiffs under the Memorandum of Sale. Significantly, since plaintiffs neglected to tender their performance under the Memorandum of Sale by paying the balance of the purchase price, defendants were in fact never put in a position to deliver the title to plaintiffs in any event. Plaintiffs' bare assertion that defendants could not deliver insurable title is not sufficient to trigger defendants' duty to refund the deposit, and thus plaintiffs fail to make out a claim for breach of contract. Count III is accordingly dismissed.

### D. Wrongful Conversion

In a recurring theme, in Count IV plaintiffs assert that defendants have wrongfully converted their earnest money deposit by failing to refund it. In the District of Columbia, "[c]onversion has generally been defined as any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto."Flocco v. State Farm Mutual Auto. Ins. Co., 752 A.2d 147, 158 (D.C.2000) (quoting Chase Manhattan Bank v. Burden, 489 A.2d 494, 495 (D.C.1985)) (emphasis added). In this case, plaintiffs declare that defendants have exercised "ownership, dominion and control" over the deposit without "permission or justification." Am. Compl. ¶ 53. Defendants, however, in fact have a lawful claim to plaintiffs' deposit by virtue of the Memorandum of Sale that expressly provides for forfeiture of the deposit in the event of default. As noted above with respect to Count III, plaintiffs did not perform under that agreement. Defendants retention of the deposit was not, therefore, "unlawful" for the purposes of conversion because of the contractual right that accrued as a result of plaintiffs' failure to pay the balance of the purchase price to defendants. See Flocco, 752 F.2d at 160 (holding that the defendants were not liable for conversion because they were arguably entitled to "the right to file a[n] [insurance] claim under [their] policy"). Hence, Count IV is dismissed because plaintiff has not stated a claim for conversion.

### E. Conspiracy

*14 Count V contains plaintiffs' allegations that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 12
Slip Copy, 2007 WL 2893418 (D.D.C.)
**(Cite as: Slip Copy)**

defendants engaged in a civil conspiracy to deprive plaintiffs of their deposit money. Am. Compl. ¶ 56. In the District of Columbia, civil conspiracy is not an independent claim, but rather " 'a means for establishing vicarious liability for [an] underlying tort.' " _Weishapl v. Sowers,_ 771 A.2d 1014, 1023-24 (D.C.2001) (quoting _Griva v. Davison,_ 637 A.2d 830, 848 (D.C.1994)). To make out a prima facie case for civil conspiracy in the District of Columbia, a plaintiff must properly allege: (1) an agreement between two or more entities, (2) to participate in an unlawful purpose, and (3) an overt act in furtherance of that agreement. _Weishapl,_ 771 A.2d at 1023.

The factual allegations contained in Count V are impermissibly bare to withstand a motion to dismiss on the civil conspiracy claim. In effect, plaintiffs simply restate the allegedly fraudulent omissions and misrepresentations discussed in detail above, adding that the defendants concealed such information "in concert and by agreement." Am. Compl. ¶¶ 56-60. Plaintiffs also now assert that defendants acted "fraudulently or deceptively" by permitting MacDonald and Wiss to participate in the public auction in order to run up the bid. _Id._ at 58.As defendants point out, however, it is difficult to see how "allowing members of the public ... to attend a public auction is either illegal or furthers an illegal scheme"-at the very least, it is difficult to draw that inference without further factual allegations, particularly concerning the existence of an unlawful agreement in the first instance. D & G Mot. to Dismiss at 16.

In short, plaintiffs claim that defendants collectively conspired to deprive plaintiffs of their deposit, but they have failed to plead any facts to establish the existence of such a specific agreement between defendants. Instead, they rely upon conclusory statements that defendants engaged in allegedly fraudulent activity "in concert and by agreement or understanding" as the sole basis for the existence of an unlawful agreement. Although the Court must assume that the allegations in the complaint are true for the purposes of a motion to dismiss, as noted above, the Court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." _Kowal,_ 16 F.3d at 1276. In this case, plaintiffs have failed to plead any facts that can support an inference of the required element of agreement for the purposes of civil conspiracy. _Accord Paul v. Howard Univ.,_ 754 A.2d 297, 310 (D.C.2000) (explaining that conclusory statements in

a complaint concerning conspiracy that were devoid of "specific facts to support [the] assertions ... of an agreement" are insufficient to support civil conspiracy claim). Accordingly, Count V of the Amended Complaint is dismissed.

### F. Punitive Damages

**\*15** Plaintiffs' final count is a claim for punitive damages in the amount of $21,000,000. Am. Compl. ¶ 61. As defendants correctly point out, however, punitive damages is a remedy, not a freestanding ground for relief. _Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. America,_ 81 F.Supp.2d 70, 74 (D.D.C.2000) ("[P]unitive damages is a remedy and not a freestanding cause of action and should be dismissed."); _see also Gharib v. Wolf,_ No. 06-1645, 2007 WL 2225895, at \*4 (D.D.C. July 31, 2007) ("Punitive damages is a remedy and not a freestanding cause of action."). Hence, Count VI of the Amended Complaint is dismissed.

For the foregoing reasons, the Court will grant defendants' motions to dismiss in their entirety. A separate Order accompanies this Memorandum Opinion.

D.D.C.,2007.
Cadet v. Draper & Goldberg, PLLC
Slip Copy, 2007 WL 2893418 (D.D.C.)

END OF DOCUMENT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEELY D. PARR,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )  Civil Action No. 1:07-cv-01718
                                        )
MASHAALLAH EBRAHAMIAN, et al.,          )
                                        )
        Defendants.                     )

## ORDER

Upon consideration of the Motion to Dismiss by Defendants Timothy Walker and

the Walker Group, LLC, the opposition of plaintiff and the arguments of counsel if any, it

is hereby,

ORDERED that the Motion to Dismiss be and the same hereby his Granted; and it

is further,

ORDERED that all Counts of the Complaint against Timothy Walker and the

Walker Group, LLC be and the same hereby are dismissed with prejudice.

It is so Ordered.

_____
Judge, United States District Court, District of
Columbia

David D. Hudgins, Esquire
Juliane C. Miller, Esquire
HUDGINS LAW FIRM
515 King Street, Suite 400
Alexandria, Virginia  22314
(703) 739-3300
(703) 739-3700 (fax)

Keely D. Parr
51 Rhode Island Avenue, NW, #3
Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

KELLEY MALA,  )
    Plaintiff,  )
            )
  v.  )          CIVIL Action No. 07-0873 *UNA*
            )
SCOTT ANDERSON,et al.  )
    Defendants.  )
            )

MOTION BY PLAINTIFF OPPOSSING
TRANSFER ORDER

Plaintiff kelley Mala, timely moves and oppose this Court order to transfer case to the District Court of Puerto Rico and states as to the following reason:

1. The District Court for the District of Columbia has original jurisdiction in light of fact the Defendants are employees and persons individually acting as an instrument for the Federal Corporation.,i.e. Title 28 U.S.C. 3002 et seq and 28 U.S.C. 2671;

2. Pursuant to Admiralty/Maritime clause,regulation and status this Court can proceed with such claims under Public Vessel Act;

3. Plaintiff Mala, further sought and avers these claims and complaint should not be construe as collateral attack on present proceeding in the District Court of Puerto Rico and Plaintiff Mala, seeking and claims are on the merits of facts proof of claims, and not to be consider vexatious litigation as the District Court of Puerto Rico have proceed to vitiate by its abuse judicial powers and authority to conceal the violation by Defendants.

5

page 2.

4.   Plaintiff Mala contends his claims are pure Constitutional violation with proof of claims and further seek and requesting for OIG and this Court Order FBI Agency to interview and investigate into misconduct and impermissible acts,action and application provision all in violation of Mala's Civil Rights liberty and property interest.

**CONCLUSION:**

WHEREFORE Plaintif Mala avers and contends, if this Court continue to aver limited jurisdiction as stated in prior order, this complaint does not reveal any connection to this judicial district. Plaintiff Mala seek Order for transfer of case to the District Court of St.Thomas, Virgin Islands, pursuant to 28 U.S.C. 1391(e) Plaintiff Mala sovereign status is St.Thomas Virgin Islands., i.e. born human being flesh and blood and citizen residence and property vessel 21" Proline pleasure vessel was personal private property of Plaintiff Mala and registered to St.Thomas, Virgin Islands, not Puerto Rico and was never consider by law or regulation stateless vessel or maritime prize possession of abandon property lost upon the highseas. See attach all documents in support of my Superior Claims over any other Nunc Pro Tunc.

Submitted May 15,2007

Without Prejudice

Kelley Mala propria Persona,SPC

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Kelley Norman Joseph :Mala
C/O,01995-094,Metropolitan Detention
Center,P.O.Box 2147,San Juan,P.R.
(00922-2147)

*(upper right stamp, faint:)*
04/24/2007    2:07PM
Official Records of
ST THOMAS/ST JOHN
WILMA O. HART SMITH
RECORDER OF DEEDS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** | | | | |
| OR **1b. INDIVIDUAL'S LAST NAME** KELLEY NORMAN JOSEPH MALA | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **1c. MAILING ADDRESS** POST OFFICE BOX 2147,MDC ,GUAYNABO | **CITY** SAN JUAN | **STATE** P.R. **POSTAL CODE** 00922-2147 | | **COUNTRY** U.S. |
| **1d. TAX ID #:** SSN OR EIN 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 | **ADD'L INFO RE ORGANIZATION DEBTOR** | **1e. TYPE OF ORGANIZATION** Ens Legis-LLc | **1f. JURISDICTION OF ORGANIZATION** Private | **1g. ORGANIZATIONAL ID #, if any** USM #01995-094  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | |
| OR **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** **POSTAL CODE** | | **COUNTRY** |
| **2d. TAX ID #:** SSN OR EIN | **ADD'L INFO RE ORGANIZATION DEBTOR** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID #, if any** |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)     ☐ NONE

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** | | | | |
| OR **3b. INDIVIDUAL'S LAST NAME** Mala | **FIRST NAME** Kelley | **MIDDLE NAME** Norman | | **SUFFIX** usA |
| **3c. MAILING ADDRESS** In care of:Post Office Box | **CITY** MDC | **STATE** **POSTAL CODE** | | **COUNTRY** usA |

**4. This FINANCING STATEMENT covers the following collateral:** **RECORD OWNER:Kelley Norman Joseph:Mala.** The entry of the DEBTOR in the Commercial Registry as a Transmitting Utility and all other property as follows; Certificate of Birth #: 197-1967 ,is herein liened and claimed at the certain sum,$1.BILLION U.S. DOLLARS;Security Agreement #:KNJK-022467;Exemption ID #580083514;UCC CONTRACT TRUST ACCOUNT #: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;Pre-Paid Account# ;Posted Certified Account #022820006; Social Security Account#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;All debentures,indentures,accounts,pledges,Nunc Pro.All property is **ACCEPTED FOR VALUE** and is **EXEMPT FROM LEVY**,pursuant to House Joint Resolution 192 of June 5,1933 and UCC sections 1-104,10-104,3-419,and the Orders therefrom are released to DEBTOR,to include all signatures,endorsements,fascimile,copyright,printed,tpyed or photocopies of "RECORD OWNER'S AND NAME TITLE."RECORD OWNER IS NOT GUARANTOR TO ANY OTHERS ACCOUNT BY EXPLICIT RESERVATION,WITHOUT PREJUDICE,UCC **SECTION** 1-207.**TOTAL VALUE OF INSTRUMENTS:** $1.BILLION U.S. CURRENCY ...**TOTAL VALUE OF COLLATERAL IN SECURITY AGREEMENT:**$1.BILLION U.S. CURRENCY ..

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.     Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| THE Parties are governed by USS section 1-201 thru 1-107 | | | | | | |

FILING OFFICE COPY—NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

**CC FINANCING STATEMENT ADDENDUM**
LLOW INSTRUCTIONS (front and back) CAREFULLY
NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT
9a. ORGANIZATION'S NAME

9b. INDIVIDUAL'S LAST NAME      FIRST NAME      MIDDLE NAME,SUFFIX

MISCELLANEOUS:

NOTE:
"Documentary Exicise Tax Is Not Required"

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names
11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |

ADDITIONAL SECURED PARTY'S  or  ASSIGNOR S/P'S  NAME - Insert only one name (12a or 12b)
12a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

he FINANCING STATEMENT covers [ ] timber to be cut or [ ] as-extracted    16. Additional collateral description:
ollateral, or is filed as a [XX] fixture filing.
scription of real estate:

**ALL COLLATERAL** is within the Virgin Islands of
St.Thomas.See Attached Security Agreement.
NOTE:Secured party is Holder-In-Due-Course of
**ALL** Documents,and Documents of Title Listed and
Attached to Financing Statement.

me and address of a RECORD OWNER of above-described real estate
Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a [ ] Trust  or [ ] Trustee acting with respect to property held in trust  or [ ] Decedent's Estate
18. Check only if applicable and check only one box.
[XX] Debtor is a TRANSMITTING UTILITY
[ ] Filed in connection with a Manufactured-Home Transaction — effective 30 years
[ ] Filed in connection with a Public-Finance Transaction — effective 30 years

OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 07/29/98)
M SHOULD BE TYPEWRITTEN OR COMPUTER GENERATED

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Kelley Norman Joseph:Mala,C/O
#01995-094,

1a. INITIAL FINANCING STATEMENT FILE #

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1b. This FINANCING STATEMENT AMENDMENT is
to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME

OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any  ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☒ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

## DISCRIPTION OF AMENDMENT:

-DECLARATION & CERTIFICATE OF SOVERIGN STATUS;BIRTH CERTIFICATE
-COMMERCIAL NOTICE OF TRADE NAME;
-SPECIFIC POWER OF ATTORNEY AND INDEMINIFICATION AND HOLD HARMLESS AGREEMENT:
-VIRGIN ISLANDS DRIVER'S LISCENSE
-BILL OF PEACE;
-AFFIDAVIT OF SPECIFIC NEGATIVE AVERMENT;
-BUSINESS LISCENSE VIRGIN ISLANDS;ARTICLES OF INCORPORATION:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME

OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
Mala | Kelley | Norman,Joseph: |

10.OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as Item 1a on Amendment form)

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as Item 9 on Amendment form)

12a. ORGANIZATION'S NAME

OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX
Mala | Kelley | Norman

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

_All of the above listed property is accepted for value,exempt from levy,and herewith registered in the Commercial Registry.All proceeds,product,accounts,personal property, realestate,and fixtures,and the others therefrom,are the personal property of DEBTOR,but wherein Secured Party holds all interests.

Adjustment of this filing is from House Joint Resolution 192 of June 5,1933 and Uniform Commercial Code sections 1-104 and 10-104.

HD-kx

# VIRGIN ISLANDS OF THE UNITED STATES

## DEPARTMENT OF HEALTH

### CERTIFICATE OF BIRTH

099161

**This is to certify that a birth certificate has been filed for**

KELLEY   NORMAN   MALA
(FULL NAME OF CHILD)

under File No. __197-1967__ in the Office of the Registrar of Vital

Statistics, __ST. THOMAS__ , Virgin Islands of the United States.
(ISLAND)

Born on __FEBRUARY 24, 1967__ at __CHARLOTTE AMALIE__.
(DATE OF BIRTH)   (CITY, TOWN, VILLAGE)

__ST. THOMAS__ , Virgin Islands. Sex __MALE__
(ISLAND)   (MALE OR FEMALE)

Name of Father __ELEUTHERE   NORMAN   MALA__

Maiden Name of Mother __JUSTINA   RIVERA__

File Date: __2/24/67__

MELONIE GORDON
(SIGNATURE OF REGISTRAR)

CHARLOTTE AMALIE
(CITY)

ST. THOMAS , V. I.
(ISLAND)

FEBRUARY 21, 2007
(DATE ISSUED)

This certificate is evidence of age, parentage and place of birth and should be carefully preserved.

THIS CERTIFICATE BECOMES VOID IF ALTERED

"ACCEPTED FOR VALUE, ALL RELATED ENDORSEMENT FRONT AND BACK UCC 3-419 and HOUSE JOINT RESOLUTION 192 of JUNE 3, 1933 Without prejudice UCC 1-207

Kelley Norman Joseph Mala
TIN ID#58008351A
Pre-Paid Preferred Stock
Priority-Exempt from Levy

Certified Mail #7006 2150 0000 4862 3477







Election System of the
Virgin Islands I.D.
Name of Elector
KELLEY B.J. NALA
CONTANT #243 of Elector
ST. THOMAS, V.I.
Party          Place of Birth
DEMOCRAT       ST. THOMAS
Birth Date     Polling District
FEB. 24/67     STT-7-M
Expire Date         9412
STT-STJ
Social Security No. 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

Supervisor of Elections

Signature

---

**Birth Cert. #070396**
Proof of Citizenship
**File #197-1967**
The Above Mentioned Elector has
been registered and enrolled
this Day 25 of **February**
**2005** .

*Evelene A. Prauve*
Registrar of Board Member Signature

ACCEPTED FOR VALUE RETURN FOR VALUE
ALL Related endorsement Front and back
UCC 3-419, and House Joint Resolution 192
June 3, 1933,

Without Prejudice

Kelley N.J. Nala, (c)1967, SPC

5/15/07





U.S. VIRGIN ISLANDS
DRIVER'S LICENSE

KELLEY J. MALA
242 EST
CHARLOTTE BY E.

License #
2200111239

Class  Sex  Hal  Wgt.  Place of Birth
A  M  5.6  145  STT THOMAS USVI

Mangore  Eyes  Hair  Blood  Date of Birth
NONE  BRN  BLK       02/24/1967

Issued        Expires
02/27/2001    02/24/2006

CAUTION STOP FOR ALL SCHOOL, RT., & SR CITIZEN BUSES
is certificate must be carried when driving. If lost, destroyed, or stolen,
a duplicate must be obtained at once.

VIRGIN ISLANDS POLICE DEPARTMENT
MOTOR VEHICLE BUREAU

ORGANIC DONOR INFORMATION

I HEREBY MAKE AN ANATOMICAL GIFT, TO
BE EFFECTIVE UPON MY DEATH OF:

A: Any needed organs or parts.
B: The following body parts:

C: Limitation(s):

Restrictions:

ss A =  Private
ss B =  School Bus
ss C =  Taxi or Chauffeur
ss D =  Motorcycle Only
ss E =  Heavy Equipment
ss S =  Special

NO

Elton Lewis
Commisioner

"Accepted For Value In Accord All Related
Endorsement Front and Back UCC 3-419
and Joint Resolution 192 June 3,1933
Without Prejudice

Kelley N.J. Mala, (c)1967, SPC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KELLEY MALA,          )
    Plaintiff,    )
              )          RE:CIVIL.NO. 07 0873
    vs.               )          District of COLUMBIA
              )          TRANSFERRED
              )
SCOTT ANDERSON, et al. )
    Defendants.   )
              )

## TAKE JUDICIAL NOTICE

Pursuant United States District Court for the District of COLUMBIA Order transferred civil case to District Court of Puerto Rico, See attach ORDER in reference.

Plaintiff Mala, timely inform this Court pursuant 28 U.S.C. 1391(e) and all other statute to transfer this case to District Court of St.Thomas, Virgin Islands  Plaintiff Mala  resident and born flesh and blood of sovereign status St.Thomas Virgin Islands and personal private property 21"pleasure boat own and registered to sovereign St.Thomas,Virgin Islands.

Plaintiff Mala further contends, he has pending matters in this court and seek not to have these matter conflect or dismiss for mistaken application of being redundancy vitiating the merits, Plaintiff Mala claims are not to be interpret construe as collateral attack to any other proceedings with this court or direct appeals.

Respectfully

Dated: May 15,2007

Without Prejudice

cc: files,District Court Columbia          Kelley Mala Propria Persona

5/15/07

**FILED**

MAY – 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KELLEY MALA,  )
  )
   Plaintiff,  )
  )
v.  )    Civil Action No.   07 0873
  )
SCOTT ANDERSON, et al.  )
  )
   Defendants.  )

## TRANSFER ORDER

This matter comes before the Court on review of plaintiff's application to proceed *in forma pauperis* and his *pro se* complaint. Plaintiff is incarcerated at the Metropolitan Detention Center in Catano, Puerto Rico. He claims that while he was sailing in the waters of Puerto Rico, federal agents unlawfully searched and seized his vessel. Plaintiff also alleges that he was assaulted by federal law enforcement officials.

The complaint does not reveal any connection to this judicial district. The events giving rise to plaintiff's claims occurred in Puerto Rico. Under Title 28 U.S.C. § 1404(a) a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." In the interests of justice, it is

**ORDERED** that the case is **TRANSFERRED** to the United States District Court for the District of Puerto Rico. Whether plaintiff should be permitted to proceed *in forma pauperis* is a matter to be addressed by the transferee court.

_____
United States District Judge

Dated: 4/2/07

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

KELLEY MALA,        )
    Plaintiff,      )
              )
  v.              )     CIVIL Action No. 07-0873 *UNA*
              )
SCOTT ANDERSON,etal. )
    Defendants.     )
              )

MOTION BY PLAINTIFF OPPOSSING
TRANSFER ORDER

Plaintiff kelley Mala, timely moves and oppose this Court order
to transfer case to the District Court of Puerto Rico and states as
to the following reason:

1.  The District Court for the District of Columbia has original
jurisdiction in light of fact the Defendants are employees and persons
individually acting as an instrument for the Federal Corporation.,i.e.
Title 28 U.S.C. 3002 et seq and 28 U.S.C. 2671;

2.  Pursuant to Admiralty/Maritime clause,regulation and status this
Court can proceed with such claims under Public Vessel Act;

3.  Plaintiff Mala, further sought and avers these claims and complaint
should not be construe as collateral attack on present proceeding in the
District Court of Puerto Rico and Plaintiff Mala, seeking and claims are
on the merits of facts proof of claims, and not to be consider vexatious
litigation as the District Court of Puerto Rico have proceed to vitiate
by its abuse judicial powers and authority to conceal the violation by
Defendants.

5

page 2.

4.    Plaintiff Mala contends his claims are pure Constitutional violation with proof of claims and further seek and requesting for OIG and this Court Order FBI Agency to interview and investigate into misconduct and impermissible acts,action and application provision all in violation of Mala's Civil Rights liberty and property interest.

**CONCLUSION:**

WHEREFORE Plaintif Mala avers and contends, if this Court continue to aver limited jurisdiction as stated in prior order, this complaint does not reveal any connection to this judicial district. Plaintiff Mala seek Order for transfer of case to the District Court of St.Thomas, Virgin Islands, pursuant to 28 U.S.C. 1391(e) Plaintiff Mala sovereign status is St.Thomas Virgin Islands., i.e. born human being flesh and blood and citizen residence and property vessel 21" Proline pleasure vessel was personal private property of Plaintiff Mala and registered to St.Thomas, Virgin Islands, not Puerto Rico and was never consider by law or regulation stateless vessel or maritime prize possession of abandon property lost upon the highseas. See attach all documents in support of my Superior Claims over any other Nunc Pro Tunc.

Submitted May 15,2007

Without Prejudice

Kelley Mala propria Persona,SPC

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

```
Kelley Norman Joseph :Mala
C/0,01995-094,Metropolitan Detention
Center,P.O.Box 2147,San Juan,P.R.
        (00922-2147)
```

04/14/2007    4:07PM
Official Records of
ST THOMAS/ST JOHN
WILMA O. HART SMITH
RECORDER OF DEEDS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

KELLEY NORMAN JOSEPH MALA

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| POST OFFICE BOX 2147,MDC ,GUAYNABO | SAN JUAN | P.R. | 00922-2147 | U.S. |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 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 | | Ens Legis-LLc | Private | USM #01995-094 |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names ☐ NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b) ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| | Mala | Kelley | Norman | usA |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| In care of:Post Office Box | MDC | | | usA |

**4. This FINANCING STATEMENT covers the following collateral:** **RECORD OWNER:Kelley Norman Joseph:Mala.** **The entry of the DEBTOR in the Commercial Registry as a Transmitting Utility and all other property as follows; Certificate of Birth #: 197-1967 ,is herein liened and claimed at the certain sum,$1.BILLION U.S. DOLLARS;Security Agreement #:KNJK-022467;Exemption ID #580083514;UCC CONTRACT TRUST ACCOUNT #: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;Pre-Paid Account#            ;Posted Certified  Account #022820006; Social Security Account#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;All debentures,indentures,accounts,pledges,Nunc Pro.All property is ACCEPTED FOR VALUE and is EXEMPT FROM LEVY,pursuant to House Joint Resolution 192 of June 5,1933 and UCC sections 1-104,10-104,3-419,and the Orders therefrom are released to DEBTOR,to include all signatures,endorsements,fascimile,copyright,printed,tpyed or photocopies of "RECORD OWNER'S AND NAME TITLE."RECORD OWNER IS NOT GUARANTOR TO ANY OTHERS ACCOUNT BY EXPLICIT RESERVATION,WITHOUT PREJUDICE,UCC SECTION 1-207.TOTAL VALUE OF INSTRUMENTS: $1.BILLION U.S. CURRENCY ...TOTAL VALUE OF COLLATERAL IN SECURITY AGREEMENT:$1.BILLION U.S. CURRENCY ..**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

THE Parties are governed by USS section 1-201 thru 1-107

CC FINANCING STATEMENT ADDENDUM
LLOW INSTRUCTIONS (front and back) CAREFULLY

NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

MISCELLANEOUS:

NOTE:
"Documentary Exicise Tax Is Not Required"

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |

ADDITIONAL SECURED PARTY'S  or  ASSIGNOR S/P'S  NAME - Insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

is FINANCING STATEMENT covers [ ] timber to be cut or [ ] as-extracted allateral, or is filed as a [XX] fixture filing.
iscription of real estate.

16. Additional collateral description:

ALL COLLATERAL is within the Virgin Islands of
St.Thomas.See Attached Security Agreement.
NOTE:Secured party is Holder-In-Due-Course of
ALL Documents,and Documents of Title Listed and
Attached to Financing Statement.

me and address of a RECORD OWNER of above-described real estate
Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a [ ] Trust  or  [ ] Trustee acting with respect to property held in trust  or  [ ] Decedent's Estate

18. Check only if applicable and check only one box.
[XX] Debtor is a TRANSMITTING UTILITY
[ ] Filed in connection with a Manufactured-Home Transaction — effective 30 years
[ ] Filed in connection with a Public-Finance Transaction — effective 30 years

M SHOULD BE TYPEWRITTEN OR COMPUTER GENERATED

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Kelley Norman Joseph:Mala,C/O
#01995-094,

1a. INITIAL FINANCING STATEMENT FILE #

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME

OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☒ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

## DISCRIPTION OF AMENDMENT:

-DECLARATION & CERTIFICATE OF SOVERIGN STATUS;BIRTH CERTIFICATE
-COMMERCIAL NOTICE OF TRADE NAME;
-SPECIFIC POWER OF ATTORNEY AND INDEMINIFICATION AND HOLD HARMLESS AGREEMENT:
-VIRGIN ISLANDS DRIVER'S LISCENSE
-BILL OF PEACE;
-AFFIDAVIT OF SPECIFIC NEGATIVE AVERMENT;
-BUSINESS LISCENSE VIRGIN ISLANDS;ARTICLES OF INCORPORATION:

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

9a. ORGANIZATION'S NAME

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
Mala | Kelley | Norman,Joseph: |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

UCC FINANCING STATEMENT **AMENDMENT ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as Item 1a on Amendment form)

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as Item 9 on Amendment form)

12a. ORGANIZATION'S NAME

OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX
| Mala | Kelley | Norman

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

_All of the above listed property is accepted for value, exempt from levy, and herewith registered in the Commercial Registry. All proceeds, product, accounts, personal property, realestate, and fixtures, and the others therefrom, are the personal property of DEBTOR, but wherein Secured Party holds all interests.

Adjustment of this filing is from House Joint Resolution 192 of June 5, 1933 and Uniform Commercial Code sections 1-104 and 10-104.

"ACCEPTED FOR VALUE ALL RELATED
ENDORSEMENT FRONT AND BACK
UCC 3-419 and HOUSE JOINT RESOLUTION
192 of JUNE 3, 1933
Without prejudice UCC 1-207

Kelley Norman Joseph Mala
SSN ID#580083514
Pre-Paid Preferred Stock
Priority-Exempt from Levy

HD-kx

# VIRGIN ISLANDS OF THE UNITED STATES

## DEPARTMENT OF HEALTH

### CERTIFICATE OF BIRTH

099161

This is to certify that a birth certificate has been filed for

KELLEY NORMAN MALA
(FULL NAME OF CHILD)

under File No. 197-1967 in the Office of the Registrar of Vital

Statistics, ST. THOMAS , Virgin Islands of the United States.
(ISLAND)

Born on FEBRUARY 24, 1967 at CHARLOTTE AMALIE .
(DATE OF BIRTH)          (CITY, TOWN, VILLAGE)

ST. THOMAS , Virgin Islands. Sex MALE
(ISLAND)                          (MALE OR FEMALE)

Name of Father ELEUTHERE NORMAN MALA

Maiden Name of Mother JUSTINA RIVERA

File Date: 2/24/67

Melonie Gordon
MELONIE GORDON
(SIGNATURE OF REGISTRAR)

This certificate is evidence of age, parentage and place of birth and should be carefully preserved.

THIS CERTIFICATE BECOMES VOID IF ALTERED

CHARLOTTE AMALIE
(CITY)

ST. THOMAS , V. I.
(ISLAND)

FEBRUARY 21, 2007
(DATE ISSUED)

Certified Mail #7006 2150 0000 4862 3477



**UNITED STATES VIRGIN ISLANDS**
**CERTIFICATE OF BOAT REGISTRATION**
STATE OF PRINCIPAL USE — VIRGIN ISLANDS

| REGISTRATION NO. | Class | Code | EXPIRATION DATE |
|---|---|---|---|
| V.I.8320-T | 1 | 4 | 2 | 1 | 5 | 6-30, 2006 |

| YEAR BUILT | LENGTH FT. IN. | HULL I.D. NO. | MAKE OF BOAT |
|---|---|---|---|
| 89 | 21'0 | PLC4125J889 | PRO LINE |

KELLY JOSEPH NORMAN MALA
CONTANT 242
ST.THOMAS,V.I.00802

"ACCEPTED FOR
pursuant to
WITHOUT
UCC 1-1

FOR VALUE"
5.1933 UCC 3-419,
07 AND BACK
2007 UCC, 1-308)
(TODAY)





Election System of the
Virgin Islands I.D.
Name of Elector
KELLEY B.J. MALA
CONTANT #243 of Elector
ST. THOMAS, V.I.
Party                Place of Birth
DEMOCRAT           ST. THOMAS
Born Date           Polling District
FEB. 24/67         STT-7-M
                    9412
STT-STJ
Social Security No. 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
Supervisor of Elections          Signature

Birth Cert. #070396
Proof of Citizenship
File #197-1967
The Above Mentioned Elector has
been registered and enrolled
this Day  25  of  February
2005 .

Registrar of Board Member Signature

ACCEPTED FOR VALUE RETURN FOR VALUE
ALL Related endorsement Front and back
UCC 3-419, and House Joint Resolution 192
June 3,1933,

Without Prejudice

Kelley N.J. Mala, (c)1967, SPC

5/15/07





"Accepted For Value In Accord All Related
Endorsement Front and Back UCC 3-419
and Joint Resolution 192 June 3,1933
Without Prejudice

Kelley N.J. Mala, (c)1967, SPC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KELLEY MALA,                      )
          Plaintiff,              )
                                  )
                                  )       RE:CIVIL.NO. 07 0873
     vs.                          )       District of COLUMBIA
                                  )       TRANSFERRED
                                  )
                                  )
SCOTT ANDERSON, et al.            )
          Defendants.             )
_____)

### TAKE JUDICIAL NOTICE

Pursuant United States District Court for the District of COLUMBIA Order transferred civil case to District Court of Puerto Rico, See attach ORDER in reference.

Plaintiff Mala, timely inform this Court pursuant 28 U.S.C. 1391(e) and all other statute to transfer this case to District Court of St.Thomas, Virgin Islands  Plaintiff Mala  resident and born flesh and blood of sovereign status St.Thomas Virgin Islands and personal private property 21"pleasure boat own and registered to sovereign St.Thomas,Virgin Islands.

Plaintiff Mala further contends, he has pending matters in this court and seek not to have these matter conflect or dismiss for mistaken application of being redundancy vitiating the merits, Plaintiff Mala claims are not to be interpret construe as collateral attack to any other proceedings with this court or direct appeals.

Respectfully

Dated: May 15,2007

Without Prejudice

Kelley Mala Propria Persona

5/15/07

cc: files,District Court Columbia

**FILED**

MAY – 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KELLEY MALA,  )
            )
    Plaintiff,  )
            )
    v.        )      Civil Action No.    07 0873
            )
SCOTT ANDERSON, et al.  )
            )
    Defendants.  )

## TRANSFER ORDER

This matter comes before the Court on review of plaintiff's application to proceed *in forma pauperis* and his *pro se* complaint. Plaintiff is incarcerated at the Metropolitan Detention Center in Catano, Puerto Rico. He claims that while he was sailing in the waters of Puerto Rico, federal agents unlawfully searched and seized his vessel. Plaintiff also alleges that he was assaulted by federal law enforcement officials.

The complaint does not reveal any connection to this judicial district. The events giving rise to plaintiff's claims occurred in Puerto Rico. Under Title 28 U.S.C. § 1404(a) a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." In the interests of justice, it is

**ORDERED** that the case is **TRANSFERRED** to the United States District Court for the District of Puerto Rico. Whether plaintiff should be permitted to proceed *in forma pauperis* is a matter to be addressed by the transferee court.

_____
United States District Judge

Dated: 4/3/07