UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KEELY D. PARR,                      )
                                    )
      Plaintiff,                    )
                                    )
      v.                            )  Civil Action No. 07-1718 (PLF)
                                    )
MASHAALLAH EBRAHIMIAN, *et al.*,    )
                                    )
      Defendants.                   )
_____ )


OPINION

      This matter is before the Court on two separate motions to dismiss, one filed by defendants Timothy Walker and the Walker Group, LLC ("the Walker Defendants"), and the other by defendants Mashaallah Ebrahamian and Rimcor, LLC ("the Rimcor Defendants"). After consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case, the Court will grant both motions in part and deny them in part.

I. BACKGROUND

      Plaintiff Keely D. Parr, proceeding *pro se*, alleges the following in her amended complaint: In 2006 defendant Rimcor, LLC, of which defendant Mashaallah Ebrahamian is the sole owner, Am. Compl. ¶ 4, offered for sale a condominium located at 51 Rhode Island Avenue, N.W., No. 3, in Washington D.C. ("the Rhode Island Avenue condominium"). Id. ¶ 10. The condominium was built in 2004 or 2005 when defendant Timothy Walker converted 51 Rhode Island Avenue, at that time a single-family dwelling, into a multi-unit condominium/ apartment building. Id. ¶ 34. Mr. Walker then sold the building to Rimcor in 2005. Id. ¶ 33. In

violation of District of Columbia law, Rimcor never obtained a certificate of occupancy certifying that Rimcor was in compliance with all applicable District laws and was permitted to develop and market 51 Rhode Island Avenue as a multi-unit dwelling.  Id. ¶ 33.

On October 23, 2006, Ms. Parr obtained a Public Offering Statement, prepared by Mr. Ebrahamian on behalf of Rimcor, issued in connection with the offering of the Rhode Island Avenue condominium for sale.  Am. Compl. ¶ 13.  In that Statement Mr. Ebrahamian claimed, among other things, that "[a]ll renovation and alteration work" to the condominium "was and is being performed by [Mr. Ebrahimian] in accordance with applicable zoning ordinances, building codes, housing codes and similar laws affecting the Condominium, or as otherwise approved by District of Columbia housing inspectors."  Id. ¶ 13.  The Statement purported to be accompanied by four exhibits, including an "engineer's report," but none of those exhibits was actually attached to the Statement.  Id. ¶ 14.

On October 25, 2006, Ms. Parr entered into a contract to purchase the Rhode Island Avenue condominium from Rimcor.  Am. Compl. ¶ 10.  A few days later, an inspection of the condominium was conducted by Homes Are Us, Inc., at Ms. Parr's request.  Id. ¶ 16.  The resulting inspection report warned, "'Side rails to circular stairs off balcony do not conform to current safety standards.  Investigate to determine if units have been inspected by City.  Major Safety Hazard.'"  Id.  A copy of the inspection report was sent to Mr. Ebrahimian, who subsequently assured Ms. Parr that "all inspection items had been complied with."  Id. ¶ 17.  Mr. Ebrahimian, however, did not repair the balcony railing, nor did he arrange for the inspection of the condominium by an agent of the District of Columbia.  Id. ¶ 45(b).

Settlement of Ms. Parr's contract to purchase the Rhode Island Avenue condominium occurred on November 17, 2006, and Ms. Parr took possession of the property. Am. Compl. ¶ 18. According to Ms. Parr, however, Rimcor did not actually hold title to the condominium on that date. Id. ¶ 30. It is unclear from the complaint whether Rimcor is alleged to have subsequently acquired title and arranged its valid transfer to Ms. Parr.

In 2007, Ms. Parr made efforts to obtain various documents related to the construction and sale of her condominium. She obtained a copy of the building permit that allowed the conversion of 51 Rhode Island Avenue from a single-family dwelling into a multi-unit building. Am. Compl. ¶ 34. Before that time, she allegedly was unaware that her condominium had been built during the conversion of a single-family residence, having assumed that "she was purchasing a condominium which existed as part of the original [structure located at 51 Rhode Island Avenue] circa 1901." Id. ¶ 73.

Ms. Parr also acquired a copy of the "Engineer's Report" that was listed in the Public Offering Statement as an exhibit but was not actually attached to the Statement. Am. Compl. ¶ 35. The Report states that it was prepared by the Walker Group, LLC, and purports to document the results of a "visual observation of readily accessible systems and components during a walk through of accessible areas" in the Rhode Island Avenue condominium. Id. ¶ 36.

Ms. Parr filed a complaint in this Court against Timothy Walker, the Walker Group, LLC, Mashaallah Ebrahimian, and Rimcor, LLC, on September 26, 2007, and then filed an amended complaint on April 7, 2010. She alleges that the Rimcor Defendants are liable for breach of contract and breach of the implied duty of good faith and fair dealing, and that all defendants are liable for fraud, negligence, negligent misrepresentation, and violations of the

3

District of Columbia Condominium Act, D.C. Code §§ 42-1901 *et seq.*, and the Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*.

## II. DISCUSSION

Both the Walker Defendants and the Rimcor Defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, Ms. Parr has filed a motion to strike as untimely the Walker Defendants' reply in support of their motion to dismiss. Because the Court concludes that the untimely filing of the Walker Defendants' reply has neither prejudiced Ms. Parr nor unduly inconvenienced the Court, the Court will deny Ms. Parr's motion and focus its analysis on the defendants' motions to dismiss the complaint.

### A. *Standard of Review*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Id. at 544 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89 (2007); Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a

4

formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 550 U.S. at 556, but "something beyond . . . mere possibility . . . must be alleged[.]" Id. at 557 The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, because Rule 8(a)(2) requires a "showing," rather than a "blanket assertion," of entitlement to relief. Id. at 555 n.3. The complaint must be sufficient "to state a claim for relief that is plausible on its face." Id. at 570. The Court referred to this newly clarified standard as "the plausibility standard." Id. at 560 (abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. at 94; see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc′ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

When a plaintiff proceeds *pro se* as Ms. Parr does here, the Court reviews her filings under "less stringent standards than formal pleadings [or legal briefs] drafted by lawyers," Chandler v. W.E. Welch & Assocs., Inc., 533 F. Supp. 2d 94, 102 (D.D.C.2008) (quoting Haines

5

v. Kerner, 404 U.S. 519, 520 (1972)); see also Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009), and, when necessary, "examine[s] other pleadings to understand the nature and basis of [plaintiff's] *pro se* claims." Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002). The Court has taken note of defendants' claim that Ms. Parr is a lawyer, see Rimcor MTD at 2, but, lacking evidence that Ms. Parr is an experienced attorney, will review her filings using the same standard that would be applied to any *pro se* plaintiff.

### B. Claims Against All Defendants

#### 1. Fraud and Negligent Misrepresentation

Ms. Parr claims that all defendants are liable for fraud and/or negligent misrepresentation. Under District of Columbia law, a plaintiff states a claim for common law fraud by alleging "'(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation.'" Pearson v. Chung, 961 A.2d 1067, 1074 (D.C. 2008) (citation omitted). The elements of a claim of negligent misrepresentation are similar, except that they do not include the *scienter* requirements of a fraud claim: the plaintiff must show that the defendant "made a false statement or omitted a fact that he had a duty to disclose," that the false statement or omission "involved a material issue," and that the plaintiff "reasonably relied upon the false statement or omission to [her] detriment." Redmond v. State Farm Ins. Co., 728 A.2d 1202, 1207 (D.C. 1999).

Read liberally, as a *pro se* complaint must be on a motion to dismiss, Ms. Parr's complaint alleges that the Rimcor Defendants either negligently or knowingly failed to inform her that the Rhode Island Avenue condominium was built as a result of the conversion of a

6

single-family dwelling. See Am. Compl. ¶ 73. The complaint also asserts that the Rimcor Defendants falsely claimed that the structural elements of the condominium were either built in compliance with the District of Columbia housing code or were approved by a District of Columbia housing inspector. See id. ¶¶ 16, 17, 45. Ms. Parr entered into the contract to buy the condominium in reliance on that claim and on the assumption that the condominium was part of the original construction of the residence located at 51 Rhode Island Ave. Id. ¶ 73. As a result of the Rimcor Defendants' misrepresentations, she purchased a condominium that was not as valuable as she believed it to be. Id.. Those allegations are sufficient to state a claim for fraud, even under the heightened pleading standards required by Rule 9(b) of the Federal Rules of Civil Procedure. They also suffice to state a claim for negligent misrepresentation.

Ms. Parr fails, however, to state a claim either for fraud or for negligent misrepresentation against the Walker Defendants. Her complaint does not allege that the Walker Defendants made any misrepresentation directly to her. Instead, Ms. Parr theorizes that the Walker Group, as the general contractor that oversaw the construction involved in converting 51 Rhode Island Avenue into condominiums, must have been the source of the allegedly false assertion in Rimcor's Public Offering Statement that "[a]ll renovation and alteration work to 51 Rhode Island Avenue, a Condominium, was and is being performed by [Rimcor] in accordance with applicable zoning ordinances, building codes, housing codes and similar laws . . . ." Am. Compl. ¶ 13; see Walker Opp. at 13. For the sake of brevity, the Court will refer to that warranty contained in the Public Offering Statement as "the POS Declaration." According to Ms. Parr, that declaration was false because (1) Rimcor never "file[d] for a Certificate of Occupancy post-construction," and (2) the defendants "did not obtain the necessary inspections and final sign off

7

from [the District of Columbia regulatory authorities] prior to offering the condominimum unit for sale to the Plaintiff." Walker Opp. at 20.

As a theory of the Walker Defendants' liability, that argument is unpersuasive. Even assuming that Ms. Parr's complaint alleges sufficient facts to permit the inference that the Walker Defendants did supply the information that rendered the POS Declaration false, Ms. Parr cannot show that she reasonably relied on that declaration to her detriment. The complaint contains no allegation that the condominium is less valuable than it otherwise would be, or that Ms. Parr has been prevented from residing there, because Rimcor failed to obtain a Certificate of Occupancy. While Ms. Parr does allege that the condominium's stairway railing is unsafe, the complaint makes clear that the POS Declaration did not mislead Ms. Parr on that score; Ms. Parr knew prior to the finalization of the purchase contract for the condominium that the railing did not conform to applicable standards. See Am. Compl. ¶ 16 (housing inspection company retained by Ms. Parr prior to closing informed her that the railing did "not conform to current safety standards"). Once she learned that the railing was unsafe, Ms. Parr went forward with the purchase of the condominium in reliance, not on the Public Offering Statement, but on Mr. Ebrahimian's assurances that the problem had been addressed. Id. ¶ 17. There is no suggestion in the complaint that Mr. Ebrahimian's representation was based on any information offered by the Walker Defendants.

Aside from her arguments based on the Public Offering Statement, Ms. Parr also contends that the Walker Defendants are liable for fraud or negligent misrepresentation because they prepared the "Engineer's Report" that was supposed to accompany the Public Offering Statement, and that Report was in reality "no more than a [s]urvey." Walker Opp. at 16. But by

8

Ms. Parr's own admission, she did not obtain the Report prior to purchasing and taking possession of the condominium, and so she could not possibly have relied on it in deciding to enter into the purchase contract with Rimcor. See Am. Compl. ¶¶ 14, 35. Whether the report is more accurately classified a "survey" does not change that fact. Because there is no discernible basis in the complaint for claims of fraud or misrepresentation against the Walker Defendants, those claims will be dismissed.

2. Claims under the District of Columbia Consumer Protection Act

The District of Columbia Consumer Protection Procedures Act ("CPPA") provides in relevant part:

> It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
>
> (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .
>
> (e) misrepresent as to a material fact which has a tendency to mislead; . . .
>
> (f) fail to state a material fact if such failure tends to mislead; [or]
>
> (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered;
> . . . .

D.C. Code § 28-3904. The allegations that underlie Ms. Parr's claims under the CPPA are roughly the same as those providing the basis for her fraud and negligent misrepresentation

claims. See Opp. to Rimcor MTD at 7.[1]  Those allegations state a claim under at least one subsection of the CPPA against the Rimcor defendants, since Ms. Parr alleges, among other things, that the Rimcor defendants falsely claimed that the Rhode Island Avenue condominium had been inspected by appropriate officials and complied with applicable statutes and regulations.  See Am. Compl. ¶¶ 33, 45.  The Walker defendants, however, are not alleged to have made any representation to Ms. Parr and so cannot be held liable for a breach of any provision of the CPPA, including those quoted above, that prohibits false advertising, misleading or fraudulent representations, or other deceitful communications aimed at consumers.  Because Ms. Parr identifies no portion of the CPPA that provides for liability based on any action allegedly taken by the Walker defendants, the CPPA claims against those defendants will be dismissed.

3. Claims under the District of Columbia Condominium Act

The District of Columbia Condominium Act ("DCCA") creates a private right of action against "[a] declarant" who makes "any false or misleading statement in a public offering statement" or omits "a material fact with respect to the portion of the public offering statement that he or she prepared or caused to be prepared."  D.C. Code § 42-1904.02(d).  A "declarant" is defined as

---

[1] Under some circumstances, a plaintiff may pursue claims for common law fraud and for violations of the CPPA — as well as the District of Columbia Condominium Act — even though the factual allegations underlying the claims are similar or the same.  See Fort Lincoln Civi Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1074 (D.C. 2008).  The same may not be true of contract and tort claims arising from an identical set of facts.  See id. at 1070.  Such duplicative claims need not be dismissed at this early stage in the litigation, however.  See District of Columbia v. Chinn, 839 A.2d 701, 711 (D.C. 2003) (duplicative claims should be dismissed before the case is submitted to a jury).

> . . . any person or group of persons acting in concert who:
>
>> (a) Offers to dispose of the person's or group's interest in a condominium unit not previously disposed of;
>>
>> (b) Reserves or succeeds to any special declarant right; or
>>
>> (c) Applies for registration of the condominium.

Id. § 42-1901.02(11). In order to sell a condominium, a declarant must issue a "public offering statement" ("POS") whose contents are prescribed by statue. See id. § 42-1904.04. The POS must, among other things, "fully and accurately" "disclose . . . the characteristics of the condominium and the units therein offered," including "all unusual and material circumstances or features affecting the condominium." Id. § 42-1904.04(a).

The section of Ms. Parr's complaint alleging claims under the DCCA merely recites the elements of a cause of action under the statute and would not, in the absence of more detailed factual allegations elsewhere in the complaint, suffice to state a cognizable claim against either the Rimcor or the Walker defendants. In the complaint as a whole, however, Ms. Parr alleges that the Rimcor defendants failed to disclose in the POS that the Rhode Island Avenue condominium was not originally part of the building in which it is located, and that at least one structural element of the condominium — the balcony railing — does not conform to applicable building regulations. See Am. Compl. ¶¶ 16, 45. These allegations suffice to state a claim against the Rimcor defendants under the DCCA at this very early stage of litigation.

Ms. Parr's allegations against the Walker defendants, on the other hand, fail to state a DCCA claim. No allegations in the amended complaint permit an inference that either or both of the Walker defendants qualify as a "declarant" as that term is defined in the DCCA; neither defendant offered the condominium for sale or applied for registration of the

11

condominium. Ms. Parr suggests that the Walker defendants may be held liable under the DCCA because they were "responsible for the conversion of the property," Opp. to Walker MTD at 8, but she points to no language in the statute imposing any liability on those who convert property into condominiums but do not qualify as "declarants." Consequently, she has failed to state a claim against the Walker defendants under the DCCA.

### 4. Negligence

In addition to her claims for fraud, negligent misrepresentation, and violations of the CPPA and DCCA, Ms. Parr contends that all defendants are liable for common law negligence. See Am. Compl. ¶¶ 75-80. She asserts that the defendants breached two types of duties: (1) "a duty to exercise reasonable care in the marketing, selling, advertising and otherwise promoting of the condominium unit to plaintiff," id. ¶ 76, and (2) those duties embodied in "the regulations and codes alleged in th[e] Complaint[, which] establish the applicable standard of care governing the construction, renovation and the offering of sale of condominium units to the public." Id. ¶ 77. The first of those duties also lies at the core of Ms. Parr's claim for negligent misrepresentation; any negligence claim based on an alleged violation of that duty is entirely duplicative of the negligent misrepresentation claim and so is superfluous.

Ms. Parr also appears to attempt to state a claim for negligence *per se* based on the second set of duties she alleges; she contends that the "regulations and codes" allegedly violated by the defendants were intended to protect individuals such as herself from the type of damages that she has incurred. See Am. Compl. ¶ 77. The factual allegations made by Ms. Parr specifically in connection with this legal theory are threadbare and conclusory; Ms. Parr does not identify the regulations or codes allegedly violated by the defendants and specifies as resulting

12

damages only "ownership of a substandard and unsafe condominium." Id. ¶ 77. Nevertheless, looking at the complaint as a whole and construing it liberally, as is necessary on a motion to dismiss for failure to state a claim, the Court notes that Ms. Parr alleges that the condominium's balcony railing did "'not conform to current safety standards'" and was never repaired by the defendants prior to closing. Id. ¶¶ 16, 45(b).

Neither the Rimcor defendants nor the Walker defendants discuss in their motions to dismiss whether they may be held liable for creating an unsafe condition --- the improperly constructed balcony railing --- in the condominium sold to Ms. Parr. There is at least some authority, although perhaps no authority from the courts of the District of Columbia, for the proposition that a party responsible for the construction or alteration of a residence may be held liable for the costs of repairing any unsafe condition that the party negligently creates. See Council of Co-Owners of Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co., 517 A.2d 336, 348 (Md. 1986). Because Ms. Parr's complaint alleges that both the Rimcor and the Walker defendants were involved in the construction of her condominium, see Am. Compl. ¶¶ 17, 34, it may reasonably be inferred that either or both sets of the defendants caused the unsafe condition of the balcony railing. Given the possibility that District of Columbia law may allow for liability in such a situation, and the fact that the defendants have failed to address that possibility in any way, the Court cannot conclude at this time that the plaintiff's amended complaint fails to state a claim for negligence against the defendants.

*C. Claims Against the Rimcor Defendants Only*

Ms. Parr also alleges that the Rimcor defendants are liable for breach of contract and breach of the implied duty of good faith and fair dealing. See Am. Compl. ¶¶ 55-64. Those

13

theories of liability are based on the same set of allegations underlying Ms. Parr's other claims — that the Rhode Island Avenue condominium was not in the condition that the Rimcor defendants claimed during the sale process, see id. ¶ 58(b), and that the Rimcor defendants had not complied with various administrative requirements related to the conversion and sale of condominiums. See id. ¶ 58(a), (e).

With respect to the breach of contract claim, the Rimcor defendants contend that the contract for the sale of the condominium to Ms. Parr ceased to have any legal significance once the deed was conveyed to her. See Rimcor MTD at 7-8. But while it is true that the obligations imposed on a seller by a real estate sale contract are generally "satisfied by the delivery . . . and acceptance . . . of a deed to the property," such acceptance "does not terminate any covenants or stipulations in the contract which are not in their nature satisfied by delivery of an instrument whose purpose is to transfer title to the property." Haviland v. Dawson, 210 A.2d 551, 554 (D.C. 1965). Ms. Parr contends that various false warranties about the condition of the condominium were made in statements incorporated into the sale contract. See Opp. to Rimcor MTD at 10-12. At this stage in these proceedings the Court accepts those allegations as true and so cannot draw any conclusions about the extent to which the contractual obligations of the Rimcor defendants ended upon conveyance of the deed to Ms. Parr.

Ms. Parr further claims that the Rimcor defendants are liable for breach of the implied warranty of good faith and fair dealing, which is included by law in "all contracts" and "means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 321 (D.C. 2008) (internal quotation marks and citations omitted). Ms.

Parr alleges that the Rimcor defendants breached this duty "by affirmatively mispresenting and withholding from [her] the true nature of" the Rhode Island Avenue condominium. Am. Compl. ¶ 63. Such misrepresentations, however, are alleged to have occurred prior to the formation of the sale contract, see id. ¶¶ 13, 17, and so would constitute, if anything, bad faith in negotiation, which is not a violation of the implied contractual duty of good faith and fair dealing. See RESTATEMENT (SECOND) OF CONTRACTS § 205(c). Ms. Parr's claim for violation of that duty therefore will be dismissed.

The Court notes that the Rimcor defendants also assert that Ms. Parr's claims are deficient because she simultaneously requests contractual and extracontractual remedies. See Rimcor MTD at 10-11. But while Ms. Parr certainly may not recover damages under such mutually exclusive theories, she is not required at this point in the litigation to choose between them. See Modern Mgmt. Co. v. Wilson, 997 A.2d 37, 44 n.10 (D.C. 2010) ("a plaintiff is not required to elect between . . . alternative claims before the case is submitted to the jury" (internal quotation marks and citation omitted)).

Finally, the Rimcor defendants challenge Ms. Parr's claims for punitive damages. See Rimcor MTD at 11. As Ms. Parr has stated a claim for fraud, an intentional tort, her request for punitive damages will not be struck. See Breezevale Ltd. v. Dickinson, 879 A.2d 957, 970 (D.C. 2005) (punitive damages "permissible" for "a classic intentional tort").

III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part both motions seeking to dismiss the plaintiff's claims. Plaintiff's claims for violations of the CPPA (Count I) and DCCA (Count II) and for negligent misrepresentation (Count VII) and fraud

(Count V) will be dismissed as to the Walker defendants. Plaintiff's claim for breach of the implied duty of good faith and fair dealing (Count IV) will also be dismissed. An Order consistent with this Opinion shall issue this same day.

        SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 31, 2011