UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
KEELY D. PARR,                                )
                                              )
            Plaintiff,                        )
                                              )
      v.                                      )          Civil Action No. 07-1718 (PLF)
                                              )
MASHAALLAH EBRAHIMIAN et al.,                 )
                                              )
            Defendants.                       )
_____ )


OPINION

            This matter is before the Court on separate motions for summary judgment filed

by two sets of defendants, as well as on the plaintiff's cross-motion for partial summary

judgment with respect to certain claims against one set of defendants. The case stems from the

plaintiff's purchase of a condominium in the District of Columbia; she claims that the defendants

made numerous misrepresentations to her in conjunction with this purchase, causing her to suffer

injury. Upon consideration of the parties' respective motions, the relevant legal authorities, and

the entire record in this case, the Court will grant in part and deny in part the defendants'

motions, and it will deny the plaintiff's cross-motion.[1]

_____

[1]       The papers considered in connection with the pending motions include:
plaintiff's first amended complaint ("1st Am. Compl.") [Dkt. No. 42]; plaintiff's second
amended complaint ("2d Am. Compl.") [Dkt. No. 95]; Walker defendants' motion for summary
judgment ("Walker MSJ") [Dkt. No. 110]; Walker defendants' statement of undisputed facts
("Walker Stmt. of Facts") [Dkt. No. 110]; Rimcor defendants' motion for summary judgment
("Rimcor MSJ") [Dkt. No. 111]; Rimcor defendants' statement of undisputed facts  ("Rimcor
Stmt. of Facts") [Dkt. No. 111-7]; plaintiff's joint opposition to Rimcor MSJ and cross-motion
for partial summary judgment ("Pl.'s Rimcor Opp. & Cross-Mot.") [Dkt. No. 118]; plaintiff's
counter-statement to Rimcor defendants' statement of facts ("Pl.'s Rimcor Cntr. Stmt. of Facts")
[Dkt. No. 118-14]; plaintiff's statement of undisputed facts ("Pl.'s Stmt. of Facts") [Dkt. No.
118-15]; plaintiff's opposition to Walker MSJ ("Pl.'s Walker Opp.") [Dkt. No. 122]; plaintiff's

## I.  BACKGROUND

In late 2006, plaintiff Keely Parr bought a condominium located at 51 Rhode Island Avenue, Northwest, in the District of Columbia.  Ms. Parr purchased her condominium from Rimcor, LLC, of which Mashaallah Ebrahimian was the sole member (collectively "the Rimcor defendants").  Rimcor had, in turn, purchased the property in 2005 from Timothy Walker, who, operating through the Walker Group, LLC (collectively "the Walker defendants") had overseen the transformation of 51 Rhode Island Avenue from a single-family dwelling into a four-unit building.  On October 23, 2006, Ms. Parr received a Public Offering Statement ("POS") advertising Unit 3 for sale as a condominium.  Two days later, she entered into a contract with Rimcor, LLC, for the purchase of the unit at a price of $369,000.  The contract included a Home Inspection Contingency Clause, which enabled Ms. Parr to conduct an inspection of the unit and then to demand the repair of items identified as needing attention.  See Pl.'s Ex. 1 [Dkt. No. 118-3], at ECF page 14.  Ms. Parr hired Homes Are US, Inc., which conducted a pre-settlement inspection and issued a report that identified sixteen items of concern.  See Pl.'s Ex. 4 [Dkt. No. 118-5].  After receiving an assurance from Mr. Ebrahimian that these items had been addressed, Ms. Parr proceeded to settlement on November 17, 2006.

Eight months after settlement, on July 4, 2007, Ms. Parr wrote a letter to Mr. Ebrahimian seeking to rescind the contract, citing various purported misrepresentations made in connection with Rimcor's sale of the condominium to her.  See Pl.'s Ex. 6 [Dkt. No. 118-5].  Rimcor, through its attorney, refused Ms. Parr's request for rescission.  See Pl.'s Ex. 7 [Dkt. No. 118-5].  She filed this lawsuit in September 2007.  In her complaint, Ms. Parr sought rescission

counter-statement to Walker defendants' statement of facts ("Pl.'s Walker Cntr. Stmt. of Facts") [Dkt. No. 122-3]; Rimcor defendants' opposition to plaintiff's cross-motion ("Rimcor Opp.") [Dkt. No.128]; Walker defendants' reply ("Walker Reply") [Dkt. No. 131]; Rimcor defendants' reply ("Rimcor Reply") [Dkt. No. 132]; and plaintiff's reply ("Pl.'s Reply") [Dkt. No. 133].

of her contract with Rimcor as well as compensatory and punitive damages from both the Rimcor defendants and the Walker defendants.[2] The defendants filed separate motions to dismiss Ms. Parr's complaint, which the Court denied without prejudice in light of the issuance of a pertinent decision by the D.C. Court of Appeals. See Parr v. Ebrahimian, Memo. Opinion & Order (D.D.C. Sept. 25, 2008) [Dkt. No. 19]. The parties then entered into mediation, but, by March 2009, they reported to the Court that they had failed to reach a settlement of the case. See Joint Status Report & Request for Briefing Schedule [Dkt. No. 31].

Ms. Parr filed an amended complaint, see 1st Am. Compl., which both the Rimcor and Walker defendants moved to dismiss. Ms. Parr asserted claims against all of the defendants for fraud, negligent misrepresentation, and negligence, and for violation of the District of Columbia's Consumer Protection Procedures Act and Condominium Act. She also brought claims against the Rimcor defendants for breach of contract and breach of the implied warranty of good faith and fair dealing. In an Order and an accompanying Opinion, the Court granted in part and denied in part the defendants' motions to dismiss. Parr v. Ebrahimian, 774 F. Supp. 2d 234 (D.D.C. 2011). With respect to the Rimcor defendants, the Court dismissed Ms. Parr's claim for breach of the implied warranty of good faith and fair dealing, but concluded that she had set forth allegations sufficient to state claims under each of her other causes of action. Id. at 240-45. As to the Walker defendants, the Court dismissed all but the negligence claim. Id.

---

[2]        Ms. Parr is an attorney, see Pl.'s Ex. 6 (letter authored by Ms. Parr, signed as "Keely D. Parr, Esq."), but she proceeds *pro se* in this matter and maintains that she has never before litigated a case other than this one. See Pl.'s Rimcor Opp. & Cross-Mot. at 45. The Court previously has treated her in the same manner as it would any other *pro se* plaintiff, see Parr v. Ebrahimian, 774 F. Supp. 2d 234, 239 (D.D.C. 2011), and it will do so here in addressing the pending motions for summary judgment. Although Ms. Parr's pleadings are read liberally, the same summary judgment standard applies, notwithstanding her *pro se* status. See Cunningham v. U.S. Dep't of Justice, Civil Action No. 13-1115 (RMC), 2014 WL 1491175, at *5 (D.D.C. Apr. 16, 2014).

After taking some discovery, Ms. Parr moved the Court to reconsider the dismissal of her claims against the Walker defendants, citing certain newly discovered evidence in the form of the Rimcor defendants' answers to her interrogatories. Ms. Parr simultaneously sought leave to file a second amended complaint to incorporate allegations based on this evidence. The Court granted in part and denied in part Ms. Parr's motion for reconsideration, and it reinstated her claims for fraud and negligent misrepresentation against the Walker defendants. Parr v. Ebrahimian, Opinion & Order (D.D.C. Mar. 26, 2013) [Dkt. No. 94], at 11-12. The Court also granted Ms. Parr leave to file her second amended complaint. Id. After the close of discovery, the Rimcor and Walker defendants each filed motions for summary judgment, while Ms. Parr filed her own cross-motion for partial summary judgment as to the statutory claims brought against the Rimcor defendants.[3]

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see FED. R. CIV. P. 56(a), (c). In making that determination, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). A disputed fact is "material" if it "might affect the outcome of the suit under the governing law." Talavera v. Shah, 638 F.3d at 308 (quoting

---

[3] The Walker defendants have requested oral argument on their motion for summary judgment, but the Court does not believe that argument would be helpful, and it therefore denies that request.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." Barnett v. PA Consulting Group, Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton, 134 S. Ct. at 1866; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## III. DISCUSSION

### A. Claims Against Both Sets of Defendants

#### 1. Fraud and Negligent Misrepresentation

The Court, in its Opinion addressing the defendants' motions to dismiss Ms. Parr's first amended complaint, concluded that she had stated claims against the Rimcor defendants for fraud and negligent misrepresentation based on two alleged misrepresentations. First, Ms. Parr alleged that the Rimcor defendants had either knowingly or negligently failed to inform her that the condominium was built as a result of the conversion of a single-family dwelling into a multi-unit building. Parr v. Ebrahimian, 774 F. Supp. 2d at 240. Second, Ms. Parr alleged that the Rimcor defendants had falsely claimed that the structural elements of the condominium were either built in compliance with the District of Columbia housing code, or had been approved by a District of Columbia housing inspector. Id. This latter representation was first made to Ms. Parr in the Public Offering Statement, but, as this Court already has noted, Ms. Parr's complaint did not assert reliance on that document with respect to the matter of housing

code compliance.  See Parr v. Ebrahimian, Opinion & Order (D.D.C. Mar. 26, 2013) [Dkt. No. 94], at 6-8.  Instead, Ms. Parr claims that she relied on Mr. Ebrahimian's assurance to her, subsequent to the home inspector's identification of numerous items of concern, that those items had been adequately addressed.  See id.  In addition, upon Ms. Parr's subsequent motion for reconsideration of the Court's Opinion, the Court agreed that the Walker defendants also might be liable for fraud or negligent misrepresentation due to their connection to the alleged misrepresentations regarding the conversion of 51 Rhode Island Avenue and regarding the building's structural soundness.  Id. at 11-12.

The question now is whether Ms. Parr — who would bear the burden of proof at trial on these claims — can point to evidence in the record that would support a reasonable jury's verdict in her favor.  See Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  To prevail on a claim for common law fraud, a plaintiff must demonstrate that there was "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and [that] (5) an action [was] taken in reliance upon that representation."  Pearson v. Chung, 961 A.2d 1067, 1074 (D.C. 2008).  In addition, the plaintiff's reliance must have been a substantial factor in causing her to suffer injury.  Va. Acad. of Clinical Psychologists v. Group Hosp. & Med. Servs., Inc., 878 A.2d 1226, 1238 (D.C. 2005); see also Wetzel v. Capital City Real Estate, LLC, 73 A.3d 1000, 1002-03 (D.C. 2013) (claim for fraud requires showing of damages).  "A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen."  Saucier v. Countrywide Home Loans, 64 A.3d 428, 438 (D.C. 2013) (quoting Rothenberg v. Aero Mayflower Transit Co., 495 F. Supp. 399, 406 (D.D.C.1980)).  The elements of a claim for negligent misrepresentation are similar to those

for fraud, except that they do not include the same *scienter* requirement. Instead, the plaintiff must show that the defendant "made a false statement or omitted a fact that he had a duty to disclose," that the false statement or omission "involved a material issue," and that the plaintiff "reasonably relied upon the false statement or omission to [her] detriment." Redmond v. State Farm Ins. Co., 728 A.2d 1202, 1207 (D.C. 1999).

The Court first addresses Ms. Parr's contention concerning housing code compliance, and, relatedly, the resolution of the items identified in the pre-settlement housing inspection report. The defendants maintain that Ms. Parr has failed to substantiate her allegation that Mr. Ebrahimian's assurances to her on these matters were false. See Rimcor Reply at 5-9; Walker MSJ at 8; Walker Reply at 6-10.[4] The defendants also assert that, even assuming such misrepresentations were made to Ms. Parr, she has not been able to link them to any identifiable injury that she suffered. See Rimcor MSJ at 13-14, 15-16; Rimcor Reply at 20-21, 23-24; Walker MSJ at 11-13.

### a. Railing to Spiral Stairway

Ms. Parr places primary emphasis on one purported structural defect of the condominium, contending that the railing to the spiral stairway leading from her balcony to the ground outside was not compliant with applicable safety standards. Pl.'s Walker Opp. at 12-13; see also 2d Am. Compl. ¶¶ 20, 86(c), 108(c). In the home inspection report ordered by Ms. Parr prior to settlement, the inspector noted: "Side rails to circular stairs off balcony do not conform to current safety standards. Investigate to determine if units have been inspected by City. Major safety hazard." Pl.'s Ex. 4 [Dkt. No. 118-5]. Subsequently, Mr. Ebrahimian assured Ms. Parr

---

[4] The Rimcor defendants do not appear to dispute Ms. Parr's contention that Mr. Ebrahimian communicated an assurance that the inspection items had been addressed. See Rimcor Reply at 6-9.

that the issue had been addressed.  See Pl.'s First Affidavit ¶ 5 (Pl.'s Ex. 2) [Dkt. No. 118-3]; see also Rimcor Defendants' Objections & Answers to Plaintiff's First Set of Interrogatories (Pl.'s Ex. 12) [Dkt. No. 118-7] (answer to No. 9).  It now appears that Mr. Ebrahimian's assurance was based on a letter that had been provided to him by Mr. Walker, in which Walker asserted that the "code for the District of Columbia states that the railing [must] be 36 inches in height, which the railing is," and that the staircase also featured a necessary emergency release valve feature.  See Pl.'s Ex. 11 [Dkt. No. 118-6].  Ms. Parr contends, however, that Mr. Ebrahimian misrepresented to her that the stair railing had been inspected by an official of the District's government.  See Pl.'s Rimcor Opp. & Cross-Mot. at 34; see also 2d Am. Compl. ¶ 86(c).

The Court agrees with the defendants that Ms. Parr's claims for fraud and negligent misrepresentation cannot succeed insofar as these claims rest on facts related to the stairway railing.  Even assuming that Mr. Ebrahimian falsely represented to Ms. Parr that the railing had been officially inspected, Ms. Parr fails to draw a causal link between such a misrepresentation and any cognizable harm suffered.  True, she contends that she was left with an "unsafe condition" on her property.  Pl.'s Walker Opp. at 13.  But the lack of an inspection — and, concomitantly, a misrepresentation as to whether an inspection occurred — could have harmed Ms. Parr only if a safety violation actually existed, which an inspection would have revealed.  But Ms. Parr has not submitted evidence to support a finding that the railing actually was not compliant with the relevant safety standards.

Ms. Parr's only evidence on this point is the report of the housing inspector whom she hired; this report, however, does not feature a measurement of the railing's height or descriptions of any of its other characteristics, nor does the report identify standards against

which to assess the railing's compliance.  See Pl.'s Ex. 4.[5]  By contrast, Mr. Walker's letter to

Mr. Ebrahimian of October 15, 2006 (Pl.'s Ex. 11) states that the railing is at least 36 inches in

height, and the Walker defendants also have introduced a photograph of the railing that indicates

its height is approximately 38 inches.  They then cite the International Residential Code as

providing the applicable standard for safety, which establishes a minimum railing height of 34

inches.  See Walker MSJ at 8 (citing exhibits located at ECF pages 140-45 of Dkt. No. 110).  Ms.

Parr offers no rebuttal to the Walker defendants' evidence.  See Pl.'s Walker Opp. at 12-13; see

also Boykin v. Gray, 986 F. Supp. 2d 14, 16-17 (D.D.C. 2013) ("An opposition to a motion for

summary judgment must point to genuine issues of material fact supported by competent

evidence beyond mere supposition." (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986))).  As noted, Ms. Parr contends that she "has been injured because she

was left with an unsafe condition on the premises and a unit not inspected by the City."  Id. at 13.

But because she has not supported her contention that the railing was unsafe, and has not

explicated how the bare lack of an inspection constitutes a cognizable injury, Ms. Parr's claims

of fraud and negligent misrepresentation cannot rest on facts relating to the stairway railing.


### b.  Heating System and Water Damage

Ms. Parr also cites alleged problems with her heating and ventilation system, as

well as issues related to water damage and the condominium's plumbing.  See Pl.'s Rimcor Opp.

& Cross-Mot. at 38; Pl.'s Walker Opp. at 13-15; Pl.'s First Affidavit ¶ 10, 17, 22; Pl.'s

Supplemental Response to Rimcor Defendants' Interrogatories (Pl.'s Ex. 18) [Dkt No. 118-9].

Notably, these specific allegations do not appear in Ms. Parr's second amended complaint, nor

---

[5]      Ms. Parr states that, at trial, she could call as a witness the housing inspector who
wrote the inspection report, "to ascertain the meaning" of his statement regarding the railing.
Pl.'s Walker Opp. at 17.  But Ms. Parr has failed to place into the record any affidavit or
declaration from that inspector, indicating what the substance of such testimony might be.

were they present in her first amended complaint, which this Court considered when determining that she had stated claims for fraud and negligent misrepresentation. But the defendants have responded to these allegations, and the Court discerns no prejudice to the defendants in considering them on summary judgment. Cf. Wiley v. Glassman, 511 F.3d 151, 159 (D.C. Cir. 2007) (error to strike claim raised for first time in opposition to summary judgment motion, where factual basis for claim was substantially similar to claim contained in complaint, and there was no undue prejudice to defendant); FED. R. CIV. P. 15(b)(1) (court may permit amendment of pleadings even during trial).

Ms. Parr focuses on two problems that she asserts are linked to items identified on her inspection report. Item 12 noted the presence of a water stain on the wall in a particular corner of the bedroom, which the inspector suggested could have been due to a "lack of door flashing or wall penetration from balcony bracket," requiring "[r]epair." Pl.'s Ex. 4. And under Item 13, the inspector noted, "[l]ight smoke smells, disclosed problem with another unit's chimney." Id. Ms. Parr contends that the water stain identified in Item 12 was indicative of a pre-existing problem with the construction of the wall, and that in January of 2010 she once again encountered water damage in the same location. See Pl.'s Rimcor Opp. & Cross-Mot. at 11. Ms. Parr states that she was forced to pay for repairs to the wall, and that she also lost an opportunity to rent out her apartment due to the ongoing water leakage. Id. at 12; see also Pl.'s Ex. 18 at 2-3 (describing alleged problems with the water leak and the repairs that Ms. Parr was forced to make). With respect to the smoke smells noted by the inspector in Item 13, Ms. Parr maintains that this item related to the placement of the heating vent, which supposedly drew in smoke from the adjoining unit's chimney. See Pl.'s Rimcor Opp. & Cross-Mot. at 10, 38.[6]

---

[6] Ms. Parr also complains that the POS represented that the condominium's plumbing had been upgraded with new waste and vent lines and copper supply lines. Pl.'s

To the extent that Ms. Parr's complaints are based on Mr. Ebrahimian's assurance to her that the condominium was built in accordance with applicable code requirements, she fails to proffer any evidence demonstrating that either the leaky wall or the placement of the heating vent constituted code violations of any sort. Because of this failure, even if the Court were to assume that Mr. Ebrahimian's representation on this score was false or misleading, Ms. Parr would be unable to demonstrate a causal link between the misrepresentation and her suffering of any injury. She cites evidence, to be sure, which could support a finding that the defendants failed to obtain necessary permits, inspections, and certifications from the District's government prior to her purchase of the condominium. See Pl.'s Rimcor Opp. & Cross-Mot. at 15, 36 (citing record evidence raising questions of fact whether inspections were performed and whether permit was obtained for installation of heating system, and demonstrating that no Certificate of Occupancy was obtained subsequent to the alteration and renovation work performed by the Walker defendants); see also infra at 18-19 (describing this evidence in more detail).

But, as with the stairway railing, a failure to inspect the premises could only be causally connected to Ms. Parr's alleged injuries if such an inspection would have led to the repairs that Ms. Parr asserts were necessary, and this would be so only if there were actual code violations to be found. Without proffering any evidence whatsoever to support a finding that either the heating system or the leaky wall were out of compliance with relevant building code

---

Rimcor Opp. & Cross-Mot. at 12-14, 37. She contends that these upgrades were not actually made. Id. Even if Ms. Parr is correct on that point, however, her attempt to link this purported misrepresentation to any damage that she suffered is woefully deficient. She suggests that various plumbing problems, including some water leaks, were attributable to the supposed lack of new piping. In addition, she states that she was "plagued with the constant sound of water running through the walls," which she suspects was due to the presence of polyvinyl chloride piping in the building. Id. at 14. Ms. Parr's speculation on these matters is insufficient to withstand a motion for summary judgment on her claim that the defendants' representations about piping upgrades caused her any damage. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586.

requirements, Ms. Parr cannot draw a link between the defendants' purported representations and the injuries that she claims to have suffered.[7] Consequently, to the extent that Ms. Parr bases her fraud and negligent misrepresentation claims upon representations concerning housing code compliance, these claims must fail.[8]

Aside from the matter of code compliance, Ms. Parr asserts more generally that Mr. Ebrahimian assured her that the inspection items had been remedied, but that, based on her subsequent difficulties with the heating system and the water leaks, it is evident that these items were not addressed. See Pl.'s Supplemental Response to Rimcor Defendants' Interrogatories at 2-3; see also E-mail from Plaintiff to Mashaallah Ebrahimian (Apr. 18, 2007) [Pl.'s Ex. 17] (complaining of smoke smells, and maintaining that the condition "was on my inspection report and was supposedly corrected before closing"). Mr. Parr contends that she relied on Mr. Ebrahimian's assurance in moving forward to settlement. Pl.'s First Affidavit ¶¶ 5, 7. The defendants dispute that Mr. Ebrahimian's assurance entailed any false or misleading statements on these points, and further contend that, even assuming it did, Ms. Parr has not proffered evidence supporting a causal connection between such misrepresentations and the damages that she claims to have suffered. See Rimcor Reply at 7-8, 20-21, 23-24; Walker Reply at 6-9.

The Court disagrees. A reasonable jury could find that Mr. Ebrahimian's assurances implied that issues relating to water leakage in a particular area of the unit's wall, as

---

[7]     Indeed, Ms. Parr's own explication of the causal link between Mr. Ebrahimian's assurances to her and the heating vent problems reveals how speculative her argument is: "Plaintiff asserts that had plans been submitted to [the Department of Consumer and Regulatory Affairs] for a [mechanical installation] permit, *perhaps* the heating vent would have had to have been relocated to stop the drawing of air next to the party wall." Pl.'s Rimcor Opp. & Cross-Mot. at 16 (emphasis added).

[8]     Ms. Parr also argues that she was harmed because the lack of a valid Certificate of Occupancy precluded her from renting or selling the apartment. See Pl.'s Rimcor Opp. & Cross-Mot. at 16-17, 38. But she offers no legal or evidentiary support for this contention.

well as to unpleasant smoke smells in the unit, had been resolved.  A reasonable jury also could find that these representations concerned material facts about the condition of the unit, and that Ms. Parr might not have proceeded to settlement had she known that they had not been remedied.  Furthermore, while Ms. Parr's evidence may not be overwhelming, it provides a sufficient basis from which a jury might infer causation.  With respect to the water damage, Ms. Parr states that she observed evidence of leakage in the precise spot identified in the housing inspection report.  See Pl.'s Ex. 18 at 2-3.  Despite a gap of more than three years between the inspector's noting this issue and Ms. Parr's encountering further damage, a reasonable jury might infer from her personal testimony regarding the identity of location that the damage originated from the same source.  Cf. Arias v. DynCorp, 928 F. Supp. 2d 1, 8 (D.D.C. 2013) (when question of causation concerns exposure to toxins, jury may rely on common sense to infer that acute injury was caused by exposure, where injury and exposure are temporally proximate).  And with respect to the smell of smoke identified in the inspection report, Ms. Parr's subsequent experiences of her unit's smelling of smoke could support a finding in her favor.

If Ms. Parr were to succeed on these claims before a jury, she might be entitled to compensation for the diminution in the value of her condominium that was caused by these two defects.  See Dresser v. Sunderland Apartments Tenants Ass'n, Inc., 465 A.2d 835, 840 (D.C. 1983) ("[T]he measure of damages recoverable by . . . the victim of deceit in the sale of property[] is 'the difference between the amount paid and the market value of the thing acquired.'" (quoting Kraft v. Lowe, 77 A.2d 554, 558 (D.C. 1950))).  The proffered evidence on this score suggests that these damages would be exceedingly small.  The wall repair, for example, appears to have cost less than $1000.  See Pl.'s Exs. 19, 36, 37.  And Ms. Parr has proffered no evidence indicating that she ever paid for repairs to her heating system to address

the smell of smoke.  But at the summary judgment stage, Ms. Parr's task is to submit evidence

sufficient to support a finding that she was damaged, not to prove a specific amount of damages.

See Armenian Genocide Museum & Memorial, Inc. v. Cafesjian Family Foundation, 691 F.

Supp. 2d 132, 153 (D.D.C. 2010) ("[I]n order to survive a motion for summary judgment based

on the asserted insufficiency of proof of damages, a plaintiff need not, at this stage, show the

amount of damages; he is obligated only to show that they exist and are not entirely speculative."

(quoting Cormier v. D.C. Water & Sewer Auth., 959 A.2d 658, 667 (D.C. 2008)) (internal

quotation marks omitted)).  The Court concludes that Ms. Parr has carried this burden, albeit for

what appears to be a minimal recovery.

### c.  Conversion from Single-Family Dwelling to Multi-Unit Building

In its earlier Opinion, the Court identified a second allegation on which Ms.

Parr's fraud and negligent misrepresentation claims could proceed:  namely, the defendants'

alleged failure to disclose that her condominium unit had been constructed as part of a recent

conversion of 51 Rhode Island Avenue from a single-family dwelling to a four-unit building.

Parr v. Ebrahimian, 774 F. Supp. 2d at 240.  According to Ms. Parr, the defendants' failure to

disclose this fact was compounded by numerous other representations that led her to assume that

her condominium unit was not newly constructed, but, rather, had always been a part of the

building.  See Pl.'s Rimcor Opp. & Cross Motion at 19-21.  Notably, Ms. Parr does not argue

that the value of her condominium was diminished by the mere fact that her unit was newly

constructed.  Instead, she maintains that had she known this information about the provenance of

her condominium, she would have exercised closer scrutiny during the purchasing process, and

she would have been less likely to accept Mr. Ebrahimian's assurances to her that the

condominium was structurally sound and compliant with all relevant building code regulations.

See id. at 28-29.  As Ms. Parr does not contend that these representations caused her any independent injury, they cannot serve as bases for liability.[9]

## 2. Negligence

When considering the defendants' earlier motions to dismiss Ms. Parr's first amended complaint, the Court found the factual allegations relating to her negligence claim to be "threadbare and conclusory."  Parr v. Ebrahimian, 774 F. Supp. 2d at 243.  Ms. Parr seemed to have been relying on a theory of negligence *per se*, on the argument that the "regulations and codes" allegedly violated by the defendants were intended to protect individuals such as herself from the type of damages that she had incurred.  Id.  But she failed to identify the specific regulations and codes allegedly violated, and her allegation of damages referred only to her "ownership of a substandard and unsafe condominium."  Id. (quoting First Am. Compl. ¶ 77).  Nonetheless, the Court examined Ms. Parr's complaint as a whole and identified one allegation that might serve as the basis for a claim of negligence:  specifically, that the condominium's balcony railing "did not conform to current safety standards" and was never repaired by the defendants prior to closing.  Id. (quoting First Am. Compl. ¶ 16, and citing id. ¶ 45(b)).  This allegation was sufficient, the Court concluded, to state a claim for negligence, based on the possibility that District of Columbia law might allow a party responsible for the construction or

---

[9] As a final matter, the Court rejects Ms. Parr's argument that Rimcor's failure to deliver title to her on the date of settlement can provide a basis for a claim for damages.  Ms. Parr provides no evidence to support a finding that the validity of the title — although delayed in its formal transfer — was in doubt, such that "a reasonably careful and prudent person, familiar with the facts, would refuse to accept the title in the ordinary course of business."  17 WILLISTON ON CONTRACTS § 50:10, at 301-02 (4th ed. 2000).  Moreover, the sales contract specifically provided for the correction of minor problems with title, see Pl.'s Ex. 1, at 6, which, based on the evidence provided, appears to have occurred in this case.  See Pl.'s Rimcor Opp. & Cross Motion at 30.  And even during the pendency of the issue's resolution, Ms. Parr's ability to sell her interest in the property remained intact.  See Douglas v. Lyles, 841 A.2d 1, 4-5 (D.C. 2004).

alteration of a residence to be held liable for the costs of repairing any unsafe condition that the party negligently creates. Parr v. Ebrahimian, 774 F. Supp. 2d at 243.

As explained supra at 8-9, however, Ms. Parr has failed through discovery to identify evidence sufficient to support her contention that the railing actually was unsafe. Nor has she claimed to have paid for any repairs or modifications to the railing, which, if necessary to bring the railing into compliance with relevant safety standards, might constitute compensable injury. Accordingly, the Court will grant judgment to both defendants on Ms. Parr's negligence claim.

### B. Claims Against the Rimcor Defendants Only

#### 1. District of Columbia Consumer Protection Procedures Act ("CPPA")

Ms. Parr maintains that the Rimcor defendants violated the CPPA through numerous misrepresentations and omissions of material fact concerning the condominium, and she cross-moves for summary judgment on this claim. The CPPA provides in relevant part:

> It shall be a violation of this chapter, *whether or not any consumer is in fact misled, deceived or damaged thereby*, for any person to
>
> (a)   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .
> (e)  misrepresent as to a material fact which has a tendency to mislead;
> (f)  fail to state a material fact if such failure tends to mislead; . . . [or]
> (h)  advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered;

D.C. CODE § 28-3904 (emphasis added). The statute provides a cause of action to individual consumers, under which they may obtain remedies including the greater of either treble damages or statutory damages in the amount of $1500, as well as reasonable attorney's fees, punitive damages, and injunctive relief. Id. § 28-3905(k).

Upon the defendants' motions to dismiss Ms. Parr's first amended complaint, the Court concluded that she had stated a claim under the CPPA based on at least one allegation — namely, that the Rimcor defendants had falsely claimed that the condominium was compliant with applicable law or had been inspected by District of Columbia housing officials.  See <u>Parr v. Ebrahimian</u>, 774 F. Supp. 2d at 242.  As the Court now has determined, <u>see</u> <u>supra</u> at 8-9, 11-12, even with the benefit of discovery, Ms. Parr has failed to produce evidence sufficient to support a reasonable jury's finding that any misrepresentations regarding code compliance caused her any damages.  The Court has also determined, however, that Ms. Parr may be able to recover (probably minimal) compensatory damages based on Mr. Ebrahimian's representations regarding the rectification of problems with one area of water leakage and with smoke smells.  See <u>supra</u> at 12-14.  Accordingly, because a jury likewise could determine that Ms. Ebrahimian's representations as to these two issues were misleading, material, and caused harm to Ms. Parr, she may be able to collect damages, possibly treble damages, based on them.  See D.C. CODE § 28-3905(k)(2)(A); <u>see</u> <u>also</u> <u>Saucier v. Countrywide Home Loans</u>, 64 A.3d at 444-45 (misleadingness and materiality under CPPA are jury questions); <u>Fort Lincoln Civil Ass'n, Inc. v. Fort Lincoln New Town Corp.</u>, 944 A.2d 1055, 1075 (D.C. 2008) (same).

The CPPA also provides for recovery where a violation of its provisions does not cause actual harm to the consumer; in such cases, the consumer may be able to collect statutory damages in the amount of $1500 per violation.  <u>See</u> D.C. CODE § 28-3905(k)(2)(A).[10]  The

---

[10]    And, as Ms. Parr correctly argues, a consumer has Article III standing to pursue such a claim even in the absence of any pecuniary loss, as the violation of her statutory rights under the CPPA constitutes an injury-in-fact that is redressable by the award of statutory damages.  See <u>Shaw v. Marriott Int'l, Inc.</u>, 605 F.3d 1039, 1042 (D.C. Cir. 2010); <u>see</u> <u>also</u> <u>Floyd v. Bank of America Corp.</u>, 70 A.3d 246, 250-53 (D.C. 2013).  Although Ms. Parr did not specifically request an award of statutory damages in her second amended complaint, <u>see</u> 2d Am. Compl. ¶ 63, she included a request for "such other relief as [the] Court may deem just and proper."  <u>Id.</u> ¶ 63(e).

Rimcor defendants, in the Public Offering Statement for the condominium, asserted that all renovation and alteration work on the property had been performed in accordance with applicable zoning, housing, and building codes, "or as otherwise approved by District of Columbia housing inspectors." Pl.'s Ex. 3 [Dkt. No. 118-4], at 10. But Ms. Parr has cited evidence indicating failure on the part of both sets of defendants to obtain inspections required under the District's building code, and, relatedly, failure to obtain a Certificate of Occupancy subsequent to the construction work done on the building. The Court concludes that Ms. Parr has raised genuine issues of fact regarding whether Rimcor's representations regarding code compliance and housing inspections could constitute a violation of one or more of the CPPA provisions cited supra at 16, which could entitle her to recover statutory damages.

Specifically, Ms. Parr cites the fact that the Rimcor defendants did not obtain a final inspection of 51 Rhode Island Avenue prior to offering the condominium units for sale, as they apparently should have done under a provision of the District of Columbia Code of Municipal Regulations. Pl.'s Rimcor Opp. & Cross-Mot. at 36 (citing 12 D.C.M.R. § 109.3.14); see also Rimcor Defendants' Answers to Plaintiff's Requests for Admissions (Pl.'s Ex. 31) [Dkt. No. 118-11] (answer to Request No. 3) (conceding that no inspection was obtained). But see Walker Defendants' Answers to Plaintiff's Second Set of Interrogatories (Pl.'s Ex. 24) [Dkt. No. 118-10], at 3-4 (answer to Interrogatory 13) (failing to recall what inspections were done prior to sale to Rimcor, but contending that required inspections did occur). Ms. Parr also points out that neither the Walker nor the Rimcor defendants obtained a Certificate of Occupancy for the building after all alteration and renovation work had been completed, but before the units were put up for sale. Pl.'s Rimcor Opp. & Cross-Mot. at 36; see also Pl.'s Ex. 31 (answer to Request Nos. 4-5). Such a Certificate is required under 12 D.C.M.R. §§ 110.1 and 110.3.5, and it marks

compliance with all relevant code requirements. Ms. Parr further notes that the Walker defendants apparently failed to obtain a mechanical installation permit for work done on the premises, which suggests that the installation of the heating system had not been approved by the District of Columbia. Pl.'s Rimcor Opp. & Cross-Mot. at 15-16, 36 (noting Walker defendants' inability to produce responsive information to her interrogatory regarding permit, which Ms. Parr sought from Department of Consumer and Regulatory Affairs but which was absent from file).

The Rimcor defendants argue that Rimcor did eventually obtain a Certificate of Occupancy for 51 Rhode Island Avenue in 2008 — two years after the sale of the condominium to Ms. Parr — which, they say, demonstrates that the building in fact does comply with all relevant housing code requirements. See Rimcor Opp. at 5-6; see also Walker Reply at 8. This argument fails to recognize that the statement in the POS concerning housing code compliance and "approv[al] by District of Columbia housing inspectors" could be misleading in light of the defendants' apparent failure to obtain the necessary inspections and certifications before the sale to Ms. Parr. It also ignores the language of D.C. CODE § 28-3904(a), which provides that the CPPA is violated, entitling one to statutory damages, when a person "represent[s] that goods or services have . . . approval [or] certification . . . that they do not have."

The Court also concludes that Ms. Parr may be entitled to statutory damages based on other purported misrepresentations made by the Rimcor defendants. The POS indicated that certain plumbing lines within the building had recently been upgraded. See Pl.'s Ex. 3, at 6-7. Ms. Parr asserts that this statement was false, based on the content of the plumbing permit produced by the Walker defendants — which was issued only for the installation of fixtures, see Pl.'s Ex. 22 — in conjunction with the Walker defendants' inability to recall what plumbing work was done on the building. See Pl.'s Ex. 24 at 3 (answer to Interrogatory 12). This

evidence reveals genuine issues of material fact regarding whether Rimcor's representation in the POS violated the CPPA, which prohibits representations that a good bears a characteristic that it does not have, and which also proscribes representations that are misleading and concern a material fact about the good.

There are two other categories of representations cited by Ms. Parr that could form the basis for awards of statutory damages under the CPPA. First, the PSO represented that the "declarant" who executed the affidavit accompanying it — Rimcor — had overseen the renovation and alteration work done on the premises. <u>See</u> <u>generally</u> Pl.'s Ex. 3. But the Rimcor defendants have conceded that all of this work had been performed by the Walker defendants prior to Rimcor's purchase of the property in 2005. Pl.'s Ex. 12 (answer to Interrogatory No. 1). The materiality of this clearly false representation is, of course, a question for the jury. Ms. Parr also complains that the Rimcor defendants failed to disclose that her unit was the product of a recent conversion of 51 Rhode Island Avenue, which formerly had been a single-family dwelling. Accompanying this failure to disclose, says Ms. Parr, were statements in the POS implying that the building already had been in use as a multi-unit dwelling. <u>See</u> Pl.'s Rimcor Opp. & Cross Mot. at 19-22. These representations also could support liability under one or more of the CPPA's provisions.

In summary, although Ms. Parr has been able to support her compensatory damages claims in connection with only two purported misrepresentations, a jury could conceivably award her statutory damages based on other representations made to her by the Rimcor defendants. Because the question of whether these representations were misleading and material, or otherwise in violation of the CPPA, are jury questions, Ms. Parr is not entitled to summary judgment on her CPPA claim. Neither, however, are the Rimcor defendants.

2.  District of Columbia Condominium Act ("DCCA")

The District of Columbia Condominium Act creates a private right of action against "[a] declarant" who makes "any false or misleading statement in a public offering statement" or omits "a material fact with respect to the portion of the public offering statement that he or she prepared or caused to be prepared."  D.C. CODE § 42-1904.02(d); see also id. § 42-1902.09(a).  A "declarant" is defined as

> . . . any person or group of persons acting in concert who:
> (A)  Offers to dispose of the person's or group's interest in a condominium unit not previously disposed of;
> (B)  Reserves or succeeds to any special declarant right; or
> (C)  Applies for registration of the condominium.

Id. § 42-1901.02(11).  In order to sell a condominium, a declarant must issue a public offering statement, the contents of which are prescribed by statute.  See id. § 42-1904.04.  The POS must, among other things, "fully and accurately" "disclose . . . the characteristics of the condominium and the units therein offered," including "all unusual and material circumstances or features affecting the condominium."  Id. § 42-1904.04(a).

Unlike an action brought under the CPPA, an individual bringing a claim under the DCCA must demonstrate that the declarant's misrepresentation or omission caused the plaintiff to suffer injury beyond the mere violation of a statutory right.  See Campbell v. Fort Lincoln New Town Corp., Inc., 55 A.3d 379, 386 & n.24 (D.C. 2012).  Ms. Parr, in her cross motion for summary judgment, cites purported misrepresentations contained in the POS concerning the building's compliance with the housing code, whether the condominium was the product of a recent conversion of a single-family dwelling, and whether the plumbing lines had been upgraded, as well as asserted misrepresentations regarding Rimcor's control over the renovation work.  See Pl.'s Rimcor Opp. & Cross-Mot. at 24-25.  But, as explained supra at

9-15, Ms. Parr fails to demonstrate that any of these representations — even if false — caused her to suffer any harm. Accordingly, the Court will grant judgment to the Rimcor defendants on Ms. Parr's claim under the Condominium Act.

### 3. Breach of Contract

Ms. Parr also brings a claim for breach of contract against the Rimcor defendants, based on essentially the same allegations that ground her other claims. See Pl.'s Rimcor Opp. & Cross Motion at 29-33; 2d Am. Compl. ¶¶ 74-82. She cites two provisions of the contract in particular, which she claims were breached: the provision under which Rimcor agreed to deliver marketable title to her, and the Home Inspection Contingency Clause pursuant to which Ms. Parr conducted the pre-settlement home inspection. Pl.'s Rimcor Opp. & Cross Motion at 30, 32.

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Logan v. LaSalle Bank Nat. Ass'n, 80 A.3d 1014, 1023 (D.C. 2013) (quoting Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009)). Ms. Parr disputes the proposition that a showing of damages constitutes an essential element of a breach of contract claim under District of Columbia law. See Pl.'s Rimcor Opp. & Cross Motion at 29-30. The Court agrees with the Rimcor defendants, however, that the case on which Ms. Parr relies for this argument focused on a different issue, namely, the accrual of a claim for breach of contract, not whether damages caused by the breach is an element of such a claim. See Wright v. Howard University, 60 A.3d 749, 753-54 (D.C. 2013). Accordingly, because Ms. Parr has only been able to support her claim for damages with respect to two items stemming from her home inspection report — relating to water damage and smells of smoke — these are the only feasible bases for a claim that the Rimcor defendants breached the Home Inspection

Contingency Clause of the sales contract. The problem for Ms. Parr is that with her breach of contract claim so limited, it is wholly duplicative of her tort claims. Although contract rescission may be an appropriate remedy when a misrepresentation induces assent to the contract, <u>see</u> RESTATEMENT (SECOND) OF CONTRACTS § 167 illus. 1-4 (1981), Ms. Parr no longer seeks rescission of her contract with Rimcor, given that she no longer owns the condominium. <u>See</u> Pl.'s First Affidavit ¶¶ 11-16, 18-21. The Court will grant judgment to the Rimcor defendants on Ms. Parr's contract claim.

### C. Piercing the Corporate Veil

The Rimcor defendants argue that Mr. Ebrahimian may not be held personally liable for any of the alleged wrongdoing asserted by Ms. Parr against him and Rimcor, LLC. They argue that Rimcor, not Mr. Ebrahimian, entered into the contract with Ms. Parr for the sale of the condominium. <u>See</u> Rimcor MSJ at 16-17. "[A] party may be permitted to pierce the corporate veil upon proof that there is (1) unity of ownership and interest [between the corporation and shareholders], and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it." <u>Estate of Raleigh v. Mitchell</u>, 947 A.2d 464, 470 (D.C. 2008) (quotations omitted). Furthermore, "[i]n determining whether the corporation is the alter ego of its shareholders, the court will consider various factors, such as (1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors." <u>Id</u>. at 470-71 (quotations omitted).

It is undisputed that Mr. Ebrahimian was the sole member of Rimcor, LLC. In addition, Ms. Parr cites a number of facts indicating that Ebrahimian conducted Rimcor's

business in his own name.  See Pl.'s Rimcor Opp. & Cross Mot. at 42-44.  Finally, in a 2007

letter from Rimcor's attorney to Ms. Parr, the attorney states that at that time, Rimcor had no

assets to its name.  See Pl.'s Ex. 7.  The Rimcor defendants put forth no response to these

proffers.  See generally Rimcor Reply.  The Court concludes that Ms. Parr has done more than

enough to raise a genuine issue of material fact regarding whether Mr. Ebrahimian may be held

personally liable for his actions in connection with the transaction between Rimcor and Ms. Parr.

### D.  Summary

The Court concludes with a final word regarding damages.  Based on the

foregoing discussion, it is clear that even if Ms. Parr were to prevail on those claims that remain

viable, she would be entitled to collect a relatively small award — far less than the amount in

controversy requirement under the diversity statute.  See 28 U.S.C. § 1332.  Nonetheless, "it is

well-settled that the amount in controversy test and a federal court's subject matter jurisdiction

are not dependent upon whether the plaintiff succeeds in the action or the alleged amount

actually is recovered by the plaintiff at the end of the case, absent a showing of bad faith."

14AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE

& PROCEDURE: JURISDICTION § 3702.4, at 488 (4th ed. 2011).  In her second amended complaint,

Ms. Parr demanded damages totaling near one million dollars for most of her claims, as well as

the remedy of rescission.  With no indication that these claims were made in bad faith, the Court

may properly adjudicate the case in exercise of its diversity jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the

defendants' motions for summary judgment, and will deny the plaintiff's cross motion for partial

summary judgment.  An appropriate Order accompanies this Opinion.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 30, 2014